Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


★  ★  ★  ★  ★  ★  ★



## OPINION

No. 04-11-00118-CR

Miguel **ROSAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-2624
Honorable Juanita A. Vasquez-Gardner, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  May 30, 2012

AFFIRMED

Miguel Rosas appeals his conviction for possession of cocaine, contending the evidence is legally insufficient to support the jury's deadly weapon finding and the punishment charge was erroneous.  We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 1:30 a.m. on November 16, 2008, police were called to a disturbance at a Super 8 Motel.  The night clerk informed the officers that some hotel patrons damaged

property in one of the motel rooms, and drove to the Whataburger across the street in a dark blue Mazda. Officer Matthew Martin saw a blue Mazda in the parking lot of the Whataburger across from the motel. Martin drove his police vehicle to the Whataburger parking lot and pulled up behind Rosas' vehicle; another officer, Vincent Giardino, also parked his vehicle behind Rosas, blocking him in. Officer Martin approached the driver's side of the car, which was running, and spoke to Rosas through the partially open window. Martin saw a small bag of marihuana and a small bag of cocaine on the passenger seat in plain view. Rosas was the only person in the vehicle. Martin did not immediately arrest Rosas, instead asking for Rosas' identification. When Martin returned to his patrol car to run Rosas' identification for outstanding warrants, he told Giardino that narcotics were in the car and to watch Rosas. Giardino, who was standing behind the driver's side window, observed Rosas trying to stuff what appeared to be a bag of marihuana into the seat to hide it. Giardino then removed Rosas from the car and handcuffed him.

When Officer Martin approached the open driver's side car door shortly after the arrest, he saw a brown paper bag with small baggies of marihuana coming out, plus the original small bag of marihuana and bag of cocaine on the passenger seat; Martin also saw a large knife on the floorboard of the driver's side by the driver's feet. The knife was a large multi-purpose weapon which included brass knuckles. Inside the car, in addition to the knife, the officers found 16 to 18 small baggies of marihuana inside a brown paper bag, the small bag of marihuana, the small bag of cocaine, a pipe, a black case with rolling papers, and $400 in cash. The cocaine weighed 0.3 grams. Rosas was cooperative at all times, and Martin never felt threatened by the knife. Rosas was indicted for intentionally and knowingly possessing a controlled substance, namely cocaine, in an amount less than one gram. The indictment also contained an allegation that

Rosas used and exhibited a deadly weapon, namely a knife, during the commission of the offense of possession.

At trial, the State presented the testimony of Officers Martin and Giardino, as summarized above, and admitted the physical evidence consisting of the marihuana and cocaine, the pipe and rolling papers, and the knife. Rosas testified in his defense that in 2008 he drove a dark blue Mazda which he kept very trashy inside. Rosas denied being at the Super 8 Motel on the night of November 16, 2008. He was returning from dropping his cousin off in New Braunfels that night, and pulled into the Whataburger parking lot because he was talking on the phone to a girl he had just met. Rosas testified the knife was given to him a long time ago and was in the car because he had just moved out of his long-time girlfriend's home and a lot of stuff he packed was still in the car. Rosas testified he did not realize he was driving around with the knife in the car that night; he also stated the knife was not down by his feet because he never puts anything under his seat. He never tried to use the knife to threaten anyone that night.

As for the drugs, Rosas acknowledged the marihuana in the car as his, and also conceded the marihuana looked like it was packaged for distribution. He explained the packaging by saying that was how it came when he bought it for his personal use and he denied intending to sell the marihuana; he explained the quantity by stating he had been going through a rough time and had been smoking a lot. Rosas denied that any drugs were in plain view on the passenger seat, explaining that the marihuana was on his left side in between the driver's seat and the door. As for the cocaine, Rosas indicated it was not his, he did not know it was there, and it may have been left in his car by someone who recently borrowed his car; he also stated he was in the back of the patrol car when the officers claimed they found the cocaine in his car. Rosas explained having $400 in cash by saying he was saving up for a new car and does not trust banks; he

denied it was money from selling drugs; one of the officers testified Rosas told him he had just cashed his paycheck that day. In addition, Rosas' two sisters testified as character witnesses. Rosas also presented the records of the Super 8 Motel showing that a different guest with a purple Mazda was registered in the motel room where the disturbance occurred. The jury found Rosas guilty of possession of less than one gram of cocaine, as charged in the indictment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West 2010) (possession of less than one gram of Penalty Group 1 controlled substance is a state jail felony).

During the punishment phase, the State rested on their guilt/innocence evidence, while Rosas presented one of his sisters as a character witness and then rested. The jury charge on punishment included an issue on whether Rosas "used or exhibited a deadly weapon, namely, a knife during the commission of the offense." An affirmative deadly weapon finding would enhance the punishment for Rosas' possession of cocaine offense from the state jail felony punishment range of 180 days to two years to the third degree felony punishment range of two to ten years. *See* TEX. PENAL CODE ANN. § 12.35(a), (c)(1) (West Supp. 2011). In addition, Rosas had filed an application for community supervision, asserting he had never been convicted of a felony. The jury charge contained an instruction informing the jury that, if they made an affirmative deadly weapon finding, the jury could, within its discretion, recommend that Rosas be placed on community supervision, which recommendation would be granted by the trial court. The jury made an affirmative deadly weapon finding, but denied Rosas' application for community supervision and recommended a sentence of two years' imprisonment. The trial court entered judgment on January 14, 2011, imposing two years' imprisonment, and no fine. Rosas appealed.

**LEGAL SUFFICIENCY - DEADLY WEAPON FINDING**

On appeal, Rosas challenges the legal sufficiency of the evidence, but only with respect to the affirmative deadly weapon finding. Rosas argues there is no evidence that he used the knife to facilitate his possession of the 0.3 grams of cocaine; he also asserts there is no evidence he intended to sell such a small amount of cocaine, and thus no evidence he used the knife to protect the cocaine.[1]

### Standard of Review & Applicable Law

In reviewing the legal sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The standard applies equally to both direct and circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). We review all the evidence admitted at trial, even evidence that was improperly admitted. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994). We defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony; the jury is free to accept or reject all, part, or none of a witness's testimony. *Brooks*, 323 S.W.3d at 899; *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). The same standard applies to a review of the sufficiency of the evidence to support the jury's findings on punishment issues, and we consider all the evidence presented during both phases of trial. *Garcia*, 919 S.W.2d at 378; *Santana v. State*, 714 S.W.2d 1, 8 (Tex. Crim. App. 1986).

A deadly weapon finding is warranted when there is evidence that a person "used or exhibited" a "deadly weapon" "during commission of a felony offense." TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (West Supp. 2011); *Coleman v. State*, 145 S.W.3d 649, 652

---

[1] Rosas had a separate pending case based on the larger amount of marihuana seized from his car.

(Tex. Crim. App. 2004). Here, Officer Martin described the large knife found in Rosas' car as a multi-purpose knife with a handle designed as brass knuckles; he testified the knife was "designed for slashing, jabbing, and punching," and was capable of causing death and serious bodily injury. Rosas does not argue the knife is not a deadly weapon, and there is sufficient evidence to show the knife fits within the definition of a "deadly weapon." *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (West Supp. 2011).

Therefore, the issue becomes whether Rosas "used" or "exhibited" the knife during his commission of the offense, i.e., during his possession of the cocaine. Under the circumstances of this case, it is undisputed that Rosas did not "exhibit" the knife. *See Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) ("exhibit" means the weapon was "consciously shown, displayed, or presented to be viewed"). Thus, the only question is whether there is any evidence that Rosas "used" the knife. "Use" is defined to mean "any employment of a deadly weapon," including "even simple possession [of the weapon], if such possession facilitates the associated felony." *Coleman*, 145 S.W.3d at 652 (quoting *Patterson*, 769 S.W.2d at 941). Rosas conceded the knife belongs to him and it was found in his car; the jury was free to disbelieve his testimony that he did not remember the knife was in the car. Thus, there is sufficient evidence that Rosas had possession of the knife. The relevant inquiry, then, is whether a rational jury could find that Rosas' possession of the knife "facilitated his commission of the offense" of possession of cocaine. *Coleman*, 145 S.W.3d at 652; *Patterson*, 769 S.W.2d at 941.

### *Application*

Both Rosas and the State cite to the same two controlling Court of Criminal Appeals cases, *Coleman* and *Patterson*, but disagree how that law applies to the facts of this case. The State argues there is sufficient evidence that Rosas' possession of the knife facilitated his

possession of the cocaine because, based on the other evidence seized from his car, the jury could have reasonably inferred Rosas had the knife within reach in the car to protect the drugs. The State points out that in addition to the knife and the small baggie with 0.3 grams of cocaine, the officers also seized: (i) a small baggie with 0.3 grams of marihuana, plus (ii) 16 to 18 more baggies of marihuana weighing 4.2 grams each which were inside a brown paper bag, (iii) a pipe and rolling papers, and (iv) $400 in cash. Officer Martin testified the manner in which the 16 to 18 smaller packages of marihuana were tied up and packaged into the larger brown bag, and the large amount of cash in the car, raised the issue in his mind of whether Rosas was selling drugs. *See Coleman*, 145 S.W.3d at 655 (evidence supported jury finding that guns facilitated defendant's possession of drugs with intent to deliver). In addition, even without making any inference of distribution, the State argues that the fact that Rosas was sitting in his parked car late at night in a public place with drugs on the passenger seat, and a brass-knuckle handle knife at his feet within easy access, supports a rational finding that he used the knife to facilitate his own safe possession of the drugs. *See Patterson*, 769 S.W.2d at 942 (rational jury could have found defendant's possession of gun was to protect and facilitate his care, custody and management of the drugs).

On the other hand, Rosas argues that, given the small quantity of cocaine (0.3 grams), there is no evidence that he possessed the knife to protect and facilitate his possession of the cocaine, as opposed to the greater quantity of marihuana which is not at issue in this case because it was charged separately. Rosas argues that all the evidence that could have supported an inference of intent to distribute went to the marihuana, and there is no evidence to support an inference he intended to sell the small "personal use" amount of cocaine. As to whether there is any evidence that his possession of the knife facilitated his possession of the cocaine, Rosas

asserts there is no evidence to support that inference. Rosas further argues that deadly weapon findings in simple possession cases such as this are absurd, particularly where the defendant is cooperative, the quantity of drugs is so small, and the weapon is merely in the same vicinity as the drugs and is not actively used or exhibited by the defendant. *See Coleman*, 145 S.W.3d at 656 (Cochran, J., concurring, and expressing concern that "[t]he use of deadly weapon findings [in drug possession cases] has grown out of all bounds.").

We join in Justice Cochran's sense of unease expressed in her *Coleman* concurrence, and joined by three other justices, concerning the broad expansion of the deadly weapon enhancement statute beyond the original legislative purpose of deterrence, and her recognition of the need for greater guidance on when a rational inference may be made that a defendant who possesses a deadly weapon has "'used' it to facilitate the commission of a drug possession offense." *Id.* at 655 (Cochran, J., concurring). We find the factors enumerated in Cochran's concurrence to be useful in assessing the sufficiency of the evidence to support a deadly weapon finding in a drug possession case: (1) the type of gun involved; (2) whether or not the gun was loaded; (3) whether or not the gun was stolen; (4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; (5) the accessibility of the gun to whomever controlled the premises; (6) the quantity of drugs involved; and (7) any evidence that might demonstrate an alternative purpose for the presence of the guns. *Id.* at 659-60. We believe such factors may be applied equally to a deadly weapon finding based on use of a knife.

Here, the type of knife found in Rosas' car is a significant factor. The knife was not merely an ordinary pocket knife with various non-aggressive and common uses, but, rather, was a large-blade knife with brass knuckles incorporated into the handle, which was specifically "designed for slashing, jabbing, and punching;" the jury could reasonably infer it had no other

purpose than as an offensive weapon. *See* TEX. PENAL CODE ANN. § 46.01(6)(A) (West Supp. 2011) (defining an "illegal knife" to include a knife with a blade over five and one-half inches); *Id.* at § 46.01(8) (West Supp. 2011) (defining "knuckles" to mean any instrument with finger rings or guards made of a hard substance and designed, made, or adapted to inflict serious bodily injury or death by striking a person with a fist enclosed in the knuckles); *see also* TEX. PENAL CODE ANN. § 46.05(a)(6) (West Supp. 2011) (providing a person commits an offense by intentionally or knowingly possessing "knuckles"). Further, there was testimony, which we must accept as true under the applicable standard of review, that the knife was found on the driver's floorboard in close proximity to the drugs on the front seat of Rosas' car, and within Rosas' easy access. Finally, the small amount of cocaine was not the only drug involved, as evidence was admitted about the larger quantity of marihuana that was also seized from Rosas' car. The combination of these factors supports a reasonable inference that Rosas' possession of the knife, which was a deadly weapon in this case, facilitated his possession of the cocaine.

## *Conclusion*

Viewing the evidence and all reasonable inferences in the light most favorable to the jury's deadly weapon finding, as we must, we conclude a rational juror could have found that Rosas' possession of the knife within close proximity to the drugs, and within easy access on the floorboard of his car, facilitated his possession of the cocaine inside his car; thus, there is legally sufficient evidence that Rosas "used" a deadly weapon, i.e., the knife, during commission of the felony offense of possession of cocaine. Accordingly, we overrule Rosas' legal sufficiency challenge.

## PUNISHMENT CHARGE

In his second issue, Rosas alleges the punishment charge was erroneous because it did not instruct the jury that, if they declined to make a deadly weapon finding, he would automatically receive community supervision from the judge. The State replies the charge, as given, is a correct statement of the law; alternatively, the State argues that Rosas was not harmed by the omission because the jury did, in fact, make a deadly weapon finding, and did consider granting him community supervision, but rejected it.

> The portion of the jury charge at issue is the following instruction (emphasis added):

> The defendant in this case has applied, on written sworn motion, for community supervision stating among other things, that he has never been convicted of a felony in this or any other State.

> Our statutes provide that where a defendant is found guilty of possession of a controlled substance and the jury further finds that the defendant has never been convicted of a felony in this or any other State, ***and if the Jury in this case finds that the defendant did use or exhibit a deadly weapon, the Jury may, within its discretion, recommend community supervision*** during the good behavior of the defendant. If the Jury does recommend community supervision, it will be granted by the Court.

### *Standard of Review*

When analyzing a jury charge issue, the appellate court must first determine whether the jury charge contains error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Only if the court determines that charge error exists, does it then analyze the error for harm. *Id.* The degree of harm required for reversal depends on whether the defendant preserved the error by objecting in the trial court, in which case only "some harm" is necessary, or, in the absence of an objection, whether the record shows "egregious harm" resulted. *Id.* at 743-44.

*Analysis*

Article 42.12 of the Code of Criminal Procedure governs a defendant's eligibility for community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12 (West Supp. 2011). Section 15 of article 42.12 governs community supervision for state jail felony convictions. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 15 (West Supp. 2011). Rosas was charged with and convicted of a state jail felony possession offense under section 481.115(b) of the Health & Safety Code. Section 15 of article 42.12 states that, upon conviction of a state jail felony under section 481.115(b) of the Health & Safety Code that is punished under section 12.35(a) of the Penal Code, i.e., subject to the 180-day to two year punishment range, the trial judge "***shall*** suspend the imposition of the sentence and place the defendant on community supervision . . . ." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 15(a)(1) (emphasis added). Thus, community supervision from the judge is mandatory for a conviction of possession of less than one gram of cocaine ***if*** it is subject to the state jail felony punishment range of 180 days to two years. *Id.*

Here, the State alleged that Rosas used a deadly weapon to facilitate his possession of the cocaine, and the jury agreed and made an affirmative finding of use of a deadly weapon during the punishment phase. The effect of the deadly weapon finding was to enhance the state jail felony possession offense to a third degree felony, which carries a higher punishment range of two to ten years. TEX. PENAL CODE ANN. § 12.35(c)(1). Therefore, because Rosas was not subject to the state jail felony punishment range due to the deadly weapon finding, he was ***not eligible*** for the mandatory judge-ordered community supervision under section 15(a)(1) of article 42.12. Rosas would only have been eligible for the judge-ordered mandatory community supervision under section 15(a)(1) if the jury had made no enhancing deadly weapon finding; in

that event, Rosas would have automatically received community supervision from the judge – he would not have been dependent on the jury's recommendation for community supervision.

Rosas made a pre-trial election for the jury to assess his punishment. Section 4(a) of article 42.12 authorizes a jury to recommend community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(a) (West Supp. 2011). Section 4(d)(2) restricts the jury's ability to recommend community supervision, stating that a defendant is "***not*** eligible for community supervision ***under this section*** if the defendant: (2) is convicted of a state jail felony for which suspension of the imposition of the sentence occurs automatically under Section 15(a)." *Id.* at § 4(d)(2) (West Supp. 2011) (emphasis added). Thus, if a defendant is convicted of the type of state jail felony for which judge-ordered community supervision is mandatory under section 15(a)(1), then that defendant is "not eligible" for jury-recommended community supervision. Here, however, because Rosas did not meet the criteria for mandatory judge-ordered community supervision under section 15(a)(1) once the jury made the affirmative deadly weapon finding, thereby enhancing his punishment to a third degree felony, section 4(d)(2) did not bar the jury from considering community supervision for Rosas. Indeed, the jury was correctly instructed that they ***could*** give Rosas community supervision if they did make a deadly weapon finding.

Rosas phrases his appellate issue as one of charge error — that the jury was not instructed on what would happen if they declined to make a deadly weapon finding, i.e., the judge would have been required to grant community supervision because Rosas would then have met the criteria of section 15(a)(1). However, it was not necessary or appropriate for the jury to be instructed on the legal effect of the absence of a deadly weapon finding; the jury's role was to make a factual finding based solely on the trial evidence as to whether Rosas did or did not use a deadly weapon during his possession of the cocaine under the law given to them in the charge.

TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). The jury was entitled to receive an accurate statement of the law regarding the issue of whether a deadly weapon was used and their ability to recommend community supervision for Rosas – and they were correctly so instructed. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Abdnor*, 871 S.W.2d at 731. Applying the plain statutory language of sections 4(d)(2) and 15(a)(1) to the facts of this case, the jury charge correctly instructed the jury that, if they made an affirmative deadly weapon finding (thereby enhancing punishment to a third degree felony), their next step was to consider granting Rosas community supervision. The jury made the deadly weapon finding, and considered but decided not to grant Rosas community supervision. The punishment charge, as given, was not erroneous.

As clarified at oral argument, Rosas' real complaint seems to be that he was harmed by his attorney's closing argument asking the jury to give him jail time for the state jail felony. The record shows there was an apparent misunderstanding among the trial judge and attorneys that, even without a deadly weapon finding, Rosas was not eligible for community supervision from the judge under section 15(a)(1) because he had elected to go to the jury for punishment. Based on the misunderstanding, Rosas attempted to change his election to have the judge assess his punishment, but the State did not agree. Thereafter, during closing argument, Rosas' attorney argued against a deadly weapon finding and asked the jury to give Rosas jail time for the state jail felony based on his misunderstanding that, because Rosas elected to be punished by the jury, he was not eligible for section 15's judge-ordered community supervision, even absent a deadly weapon finding.[2]

---

[2] Defense counsel stated, "I have to tell you that if you decide he did not use a weapon, he is not eligible for probation because he's asked you to assess his punishment . . . If you . . . decide that there was a deadly weapon used in the commission of this offense, you are allowed to put him on probation . . . I can understand some of you would want to make that deadly weapon finding because you don't think he should have to go to prison for a little

Rosas asserts he was deprived of a fair punishment hearing by his election to go to the jury, instead of to the judge, for punishment in this case. However, even if Rosas had elected to be punished by the judge, upon the making of an affirmative deadly weapon finding, he would have become ineligible for the mandatory judge-ordered community supervision according to the plain language of section 15(a)(1) because he no longer would have been subject to the state jail felony punishment range – a requirement for application of section 15(a)(1). Thus, it was not Rosas' decision to exercise his right to a jury at punishment that caused him to lose the right to mandatory community supervision under section 15(a)(1); rather, it was the affirmative deadly weapon finding that made section 15(a)(1) inapplicable.

With respect to defense counsel's plea for jail time based on the misunderstanding regarding Rosas' choice of jury punishment, absent proof to the contrary, we must presume the jury followed the court's instructions to consider granting Rosas community supervision. *Thrift v. State*, 176 S.W.3d 221, 224 n.10 (Tex. Crim. App. 2005). Further, even though the record shows some confusion in the trial court concerning the effect of Rosas' election for jury punishment on the availability of judge-ordered community supervision under section 15(a)(1), such confusion did not lead to an incorrect jury charge, as discussed *supra*. Even if there was error, it became harmless once the deadly weapon finding was made, rendering Rosas ineligible for section 15(a)(1) community supervision under the plain terms of the statute. It is important to clarify, however, that a defendant's election for the jury to assess punishment does not make him ineligible to receive mandatory community supervision from the judge if he otherwise meets

---

bit of cocaine. Miguel has asked me to ask you [to] send him to the state jail. I think six months is a lot of time for a little thing. But I ask that you do that."

the criteria of section 15(a)(1); this is apparent from the plain statutory language of sections 4(d)(2) and 15(a)(1).[3]

*Conclusion*

The punishment charge correctly instructed the jury on the law applicable to its ability to recommend community supervision for Rosas. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 4(d)(2), 15(a)(1). Further, we must presume the jury followed its instructions and considered, but rejected, community supervision for Rosas despite his counsel's misplaced argument for jail time. *Thrift*, 176 S.W.3d at 224 n.10. Finally, once the deadly weapon finding was made, Rosas was ineligible for section 15(a)(1) community supervision; thus, any error or misunderstanding concerning the applicability of section 15(a)(1) became irrelevant. Rosas has failed to establish the existence of any charge error, as well as any prejudice.

## CONCLUSION

Based on the foregoing reasons, we overrule Rosas' issues on appeal and affirm the trial court's judgment.

Phylis J. Speedlin, Justice

PUBLISH

---

[3] The State agrees that a defendant who elects to be punished by a jury does not forego his right to mandatory judge-ordered community supervision if section 15(a)(1) would otherwise apply. At oral argument, the State reasoned that because section 4, which governs jury-recommended community supervision, expressly prohibits the jury from granting community supervision when a judge is required to do so under section 15, section 4(d)(2) necessarily contemplates a situation where a jury has been elected to assess punishment. We agree.