STATE of Wisconsin, Plaintiff-Respondent,

v.

David R. KASTER, Defendant-Appellant.†

Court of Appeals

*No. 02–2352–CR. Oral argument March 24, 2003.—Decided April 22, 2003.*

2003 WI App 105

(Also reported in 663 N.W.2d 390.)

† Petition to review denied 7-9-03.

753

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Steven L. Miller* of *Miller & Miller* of River Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Edwin J. Hughes*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Edwin J. Hughes*.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. David Kaster appeals a judgment entered on a jury verdict convicting him of two counts of sexual assault of a student by school staff and one count each of fourth-degree sexual assault and disorderly conduct. He also appeals an order denying his motion for postconviction relief. Kaster only challenges one of his convictions for sexual assault of a student, contending he was not "school staff" at the time of the assault. Specifically, he argues the trial court erred when it failed to give his proposed jury instruction interpreting "school staff" and that the evidence was

insufficient to convict him based on this interpretation. We disagree and affirm the judgment and order.

## BACKGROUND

¶ 2. Kaster was the boys' and girls' swimming coach at Ashwaubenon High School during the 1998–99 school year and had been involved with the swim teams at the school since 1983. He was not a teacher nor did he hold any other position at the school. He held separate contracts for the boys' and girls' teams. Kaster and the school district entered into new contracts every year, and the 1998–99 school year contracts were specifically for that term.[1] In that school year, the girls' swimming season ended on November 14, 1998, and the boys' ended on February 20, 1999. In February 2001, Kaster was charged with several crimes stemming from allegations that he had sexual contact with four members of the girls' team. One of the incidents was alleged to have occurred on March 14, 1999.

¶ 3. Among the charges against Kaster were four counts of sexual assault of a student by a school instructional staff person under Wis. Stat. § 948.095.[2] One of these charges was for the March 14 incident.

---

[1] Kaster's contract for the 1998–99 girls' coaching position stated in relevant part: "It is specifically understood and agreed that . . . this appointment is for the 1998–99 school year only."

Only the contract for 1998–99 was submitted into evidence. It is undisputed the boys' contract contained identical language.

[2] WISCONSIN STAT. § 948.095 provides:

**Sexual assault of a student by a school instructional staff person. (1)** In this section:

 (a) "School" means a public or private elementary or secondary school.

Kaster submitted jury instructions for § 948.095. His proposed instructions first defined the "providing services" portion of "school staff" to mean "the jury must find that the defendant was providing services under a contract to be the high school swimming coach." The instructions also read, " 'under contract' means the person has an ongoing legally enforceable obligation to provide services as specified under the terms and conditions of a valid contract." Kaster requested the jury be instructed regarding contract ambiguity and construction; specifically, that a contract is ambiguous if it is susceptible to two different meanings and ambiguous contracts must be construed against the drafter. Finally, Kaster proposed the jury be instructed that § 948.095 did not apply to volunteers.

¶ 4. Kaster argued that his only connection to Ashwaubenon High School was his coaching contracts and that he could be guilty only if he was under contract at the time of the assault. He maintained "school staff" had to be narrowly construed to include only school employees, contract personnel, or a similarly situated

(b) "School staff" means any person who provides services to a school or a school board, including an employe of a school or a school board and a person who provides services to a school or a school board under a contract.

(2) Whoever has sexual contact or sexual intercourse with a child who has attained the age of 16 years and who is not the defendant's spouse is guilty of a Class D felony if all of the following apply:

(a) The child is enrolled as a student in a school or a school district.

(b) The defendant is a member of the school staff of the school or school district in which the child is enrolled as a student.

All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

756

paid service provider of ascertainable duration. Because his only relationship with the school was through his contract, Kaster contended the jury should have been instructed he needed to be under contract to be found guilty. He alternatively claimed that any services he may have been providing to the school at the time of the assault were voluntary and not covered by WIS. STAT. § 948.095. Kaster based this argument on the statute's legislative history, pointing to an earlier draft that had specifically included volunteers, but that had been removed before the law's enactment.

¶ 5. During his trial, Kaster elicited testimony from various school officials and staff members to support his defense theory. Gary Wendorf, the school's past athletic director, testified coaching contracts covered the entire year, but also said coaches finish their duties at the end of the athletic season. He said Kaster was "probably not" required to perform any services outside the season. Jack Klabesadel, the current athletic director and director during the 1998–99 school year, testified the only requirement for coaches outside the seasons was to attend an awards banquet and also said Kaster was "not under contract according to our district office after the swim season and his evaluation" were complete. Klabesadel added that he would have no financial control over a coach after the season ended. During the 1998–99 school year, however, Klabesadel said he contacted Kaster after the end of the season regarding the swim teams' budgets and scheduling, as well as Kaster's evaluations and to plan fundraising. In addition, Klabesadel said Kaster conducted "open swims" at the school's pool. Both Wendorf and Klabesadel testified coaches might engage in some out-of-season activities such as fundraising or planning, but that such activities would be voluntary.

¶ 6. At the instruction conference, the court refused Kaster's instructions and opted to give the standard instruction, Wis JI—Criminal 2139.[3] The court reasoned that the purpose of Wis. Stat. § 948.095 was to protect students from people who provide services to students on a regular basis and also determined this should apply to persons such as coaches, whether or not they were volunteers. Noting the statute's breadth, the court reasoned it was not intended to cover "someone who delivers soda to the school . . . or reseals the gym floor." However, the court added that Kaster's narrow interpretation would exclude a volunteer coach, a person § 948.095 was plainly intended to cover. In addition, the court determined § 948.095 applied regardless of the existence of a contract and added, "the state can argue to the jury that services provided makes Mr. Kaster subject to the application of the statute irrespective of whether a contract exists." Subsequently, Kaster also requested the "volunteer" portion of his instruction, which the court again denied.

¶ 7. The jury convicted Kaster of two counts of sexual assault of a student, including the March 14 incident, one count of fourth-degree sexual assault and one count of disorderly conduct. He now appeals the sexual assault of a student conviction stemming from the March 14 incident.

---

[3] The court gave the following instruction regarding the definition of school staff:

> The fourth element requires that the defendant was a member of the school staff of the school or school district in which that person named in that Count was enrolled as a student.

> "School staff" means any person who provides services to a school or school board, including an employe of a school or school board and a person who provides services to a school or a school board under a contract.

## DISCUSSION

¶ 8. Kaster argues that the trial court denied him a defense because it failed to give his proposed jury instruction. Whether a jury instruction is appropriate given the facts of a case is a legal issue subject to independent review. *See State v. Pettit*, 171 Wis. 2d 627, 637–38, 492 N.W.2d 633 (Ct. App. 1992). Kaster's proposed instruction is based on an interpretation of WIS. STAT. § 948.095. The interpretation of a statute is also a question of law we review independently. *Agnes T. v. Milwaukee County*, 189 Wis. 2d 520, 525, 525 N.W.2d 268 (1995). We first look to the statutory language and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986). If the legislative intent can be determined from the clear and unambiguous language of the statute itself, the statute's terms will be applied in accordance with the statute's plain language. *In re J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991).

¶ 9. Only if there is ambiguity do we resort to rules of construction and extrinsic materials, such as legislative history, in an effort to determine legislative intent. *See id.* A statute is ambiguous if reasonable persons could disagree as to its meaning. *Williquette*, 129 Wis. 2d at 248. "When construing statutes we are to give them their common-sense meaning to avoid unreasonable and absurd results." *Janssen v. State Farm Mut. Auto. Ins. Co.*, 2002 WI App 72, ¶ 16, 251 Wis. 2d 660, 643 N.W.2d 857. Further, we must give meaning to each word of a statute. *Kollasch v. Adamany*, 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981).

¶ 10. Kaster argues his proposed instruction that the jury must find him to be "providing services under a contract" was appropriate because the definition of "school staff" in WIS. STAT. § 948.095 must be limited to "school employees, contract personnel, or similarly situated paid service providers of ascertainable duration." In making this argument, he relies on a rule of construction, *ejusdem generis,* which limits the meaning of general words to specific words associated with the general words. *See Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 693, 317 N.W.2d 468 (1982). Kaster contends the phrase "any person who provides services" is limited by the more specific "employe" and "under contract," both of which suggest a "paid position of ascertainable duration."

¶ 11. Kaster argues WIS. STAT. § 948.095 is ambiguous because an interpretation of "school staff" that would apply to "literally anyone who provides services to a school" would create an absurd result and be unconstitutional for failing to give notice to persons subject to the statute. He maintains that such a broad interpretation renders "employe" and "under contract" superfluous and that the legislature could not have intended to include such a large group of people within the statute. Kaster also argues § 948.095 must be construed to exclude volunteer services because an earlier draft expressly *included* volunteers. He contends the legislature's removal of the phrase shows its intent not to include persons providing volunteer services to a school.

¶ 12. We are not persuaded. We agree the phrase "provides services" is very broad, but this does not necessarily make the statute unconstitutional or ambiguous. While statutes must have a reasonable degree

of clarity, exacting precision is not required unless the statute affects constitutionally protected interests. *Dog Federation v. City of South Milwaukee*, 178 Wis. 2d 353, 359–60, 504 N.W.2d 375 (Ct. App. 1993). If a statute or ordinance does not directly affect constitutionally protected interests, we may not hold it facially invalid for vagueness even though doubts as to the applicability of the challenged language in marginal fact situations may be conceived. *Id.* WISCONSIN STAT. § 948.095 does not implicate any constitutionally protected interests. Instead, it prohibits sexual assault of students by persons providing services to the schools the students attend. While its application would perhaps be questionable in certain situations, such as those noted by the trial court, we may not invalidate the statute based on these hypothetical situations. *See Dog Federation*, 178 Wis. 2d at 359–60.

¶ 13. We also reject Kaster's claim that his interpretation is necessary to avoid making "employe" and "under contract" superfluous. He contends that interpreting "providing services" broadly makes "employe" and "under contract" wholly unnecessary because they would be included within "providing services." Kaster's interpretation, however, also leaves "employe" and "under contract" superfluous. A "paid position of ascertainable duration" ostensibly includes an "employe" and persons "under contract."

¶ 14. Instead, the appropriate interpretation of Wis. Stat. § 948.095 would be to view an "employe" and persons "under contract" as examples of persons included within the group of people that provide services to a school or school board. This interpretation is supported by the statute's language that "a person who provides services" *includes* an "employe" and persons

"under contract." These phrases are illustrative, and nothing in the statute's language suggests they were meant to limit the definition of "a person who provides services." We agree this group is broad and, while we share Kaster's and the trial court's concerns that interpreting this phrase to include delivery persons or ushers at sporting events might not be precisely what the legislature intended by creating WIS. STAT. § 948.095, this problem is for the legislature, not us, to remedy.

¶ 15. Similarly, we reject Kaster's argument that WIS. STAT. § 948.095 does not apply to volunteers. A volunteer "provides services" to a school or school board. That the two examples in § 948.095 involve persons with paid positions does not change the broad definition of "school staff." While Kaster argues the legislature's removal of volunteers from the statute's final draft shows its intent not to include them, we cannot look to legislative history when interpreting an unambiguous statute. See J.A.L., 162 Wis. 2d at 962. Instead, we must look to the statute's language, as enacted, and we conclude that volunteers are included within the statute's definition of "school staff."

¶ 16. Based on the foregoing, we conclude the trial court did not deny Kaster a defense by giving the standard jury instruction. Kaster maintains the only way he could have been liable under WIS. STAT. § 948.095 was if he was "under contract" on March 14, 1999, and the jury should have been so instructed. We reject Kaster's narrow reading of the statute and conclude he would be liable if he provided services to a school or school board on March 14. The standard jury instruction's definition of "school staff" essentially matches § 948.095's definition and provides no further explanations. If the instructions given adequately cover

762

the law applicable to the facts, we will not find error by the trial court. *State v. Lenarchick*, 74 Wis. 2d 425, 455, 247 N.W.2d 80 (1976). WISCONSIN JI—CRIMINAL 2139 adequately instructs the jury on § 948.095.

¶ 17. Finally, we conclude that the evidence at trial was sufficient to allow the jury to conclude that Kaster was providing services to the school or school board when he committed the March 14 assault. Kaster's contract with the school district was for the 1998–99 school year. While Kaster argues that his coaching duties were done at the end of the boys' season on February 20, Klabesadel testified he had out-of-season contact with Kaster for planning, scheduling, budgeting and evaluation purposes. Klabesadel also testified that he and the school's swimming pool director coordinated open swims with Kaster. These open swims were outside of the swim teams' seasons and were open to all students, not just swim team members. Although Wisconsin Interscholastic Athletic Association rules prevented Kaster from coaching at these events, he was allowed to supervise his athletes if they decided to attend. Finally, Klabesadel testified he contacted Kaster during the summer of 1999 regarding fundraising for the upcoming girls' season. This evidence is sufficient to allow the jury to conclude that Kaster was providing services to Ashwaubenon's High School or school board on March 14, 1999.

¶ 18. Finally, Kaster argues we should exercise our discretionary reversal authority under Wis. STAT. § 752.35 (2001–02) because the real controversy was not fully tried due to the trial court's failure to instruct the jury as he requested. Because we have concluded the trial court did not err, we reject this argument.

*By the Court.*—Judgment and order affirmed.