**Lamar Wendell THOMPSON,**
**Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11–CM–495.**

District of Columbia Court of Appeals.

Argued Dec. 5, 2012.

Decided Jan. 17, 2013.

---

Meredith Dempsey, Student Attorney, with whom Moses Cook, Supervising Attorney, Jacqueline F. Kappler, Student Attorney, and Jared T. Rudolph, Student Attorney, were on the brief, for appellant.

Harry B. Roback, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, Chrisellen R. Kolb, and Allen T. O'Rourke, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER and BECKWITH, Associate Judges, and BELSON, Senior Judge.

FISHER, Associate Judge:

Appellant Lamar Thompson challenges his conviction for attempted possession of a prohibited weapon (a knife with a metal knuckles handle), claiming that (1) the weapon did not meet the statutory definition of "knuckles," (2) the statute is unconstitutionally vague, and (3) the prohibition infringes upon his Second Amendment rights. Finding no merit in his statutory or constitutional challenges, we affirm appellant's conviction.

## I. Background

Between 9 and 10 p.m. on September 20, 2010, Metropolitan Police Officer Bryan Adelmeyer and two other officers were investigating a series of robberies in the area of 3509 Georgia Avenue, Northwest, when they approached appellant, believing that he matched the description of a sus-

pected robber. Officer Adelmeyer asked appellant whether he knew anything about the robberies or had any weapons. Appellant responded that he had a knife, pointed to the waistband of his pants, and consented to a search of his person.

Officer Adelmeyer testified, "I lifted up [appellant's] shirt and I observed inside of his pants, in his right waistband, what appeared to be a brass knuckle handle of a knife. I started pulling the knife out and I realized it was a knife that had ... significant length to it." The weapon police removed from the sheath inside Thompson's waistband had a blade approximately nine inches long, with a series of large scalloped teeth along its spine. A photograph of the weapon is attached to this opinion.

Officer Adelmeyer arrested appellant, who was charged with possession of a prohibited weapon, namely, "a double-bladed knife with brass knuckles on the handle," in violation of D.C.Code § 22–4514(a) (2008 Supp.) (PPW (a)).[1] The information was later amended to charge attempted possession. The Honorable Marisa Demeo presided over a non-jury trial on March 18 and 21, 2011. Appellant's counsel raised, and the trial court rejected, essentially the same Fifth Amendment vagueness and Second Amendment arguments that are now before us on appeal. The trial court found that the weapon met the statutory definition of "knuckles" and that the evidence proved beyond a reasonable doubt that appellant actually possessed it. Judge Demeo described the weapon as

a multi-purpose weapon, designed to do, as I can tell, by its very design, major destruction and damage to other individuals. It's not designed solely to do things in the home or solely to defend one's self against an intruder because this knife has on one side, a large blade and on the other side, jagged edges that if once moved into an individual's body, could cause ... serious damage and perhaps death because of the way it's designed. It's designed to rip pieces out of a person's body once it's inserted in.

The court held that the addition of a blade to the knuckles did not exempt the weapon from the coverage of the PPW (a) statute, and that the weapon in evidence was a "dangerous and unusual weapon" not protected by the Second Amendment. Judge Demeo also found that appellant had carried the weapon in a concealed manner and, as a result, was not entitled to Second Amendment protections.

## II. Legal Analysis

### A. Vagueness

■ Appellant claims that the statutory definition of "knuckles" does not apply to his weapon and is unconstitutionally vague, depriving him of notice that his conduct was subject to criminal sanction. We review such questions of statutory interpretation *de novo*. *McNeely v. United States*, 874 A.2d 371, 387 (D.C.2005).

The District of Columbia, like many other jurisdictions, has prohibited possession of knuckles under some circumstances for more than a century.[2] The District's first

---

1. The PPW (a) statute provides in pertinent part: "No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, [or] knuckles...." D.C.Code § 22–4514(a) (2008 Supp.).

2. *See, e.g., People v. Persce*, 204 N.Y. 397, 97 N.E. 877, 879 (1912) ("[T]he Legislature were entirely justified in regarding [knuckles] as dangerous and foul weapons ... ordinarily the effective and illegitimate implements of thugs and brutes in carrying out their unlawful purposes."); *English v. State*, 35 Tex. 473, 476 (1871) (discussing statute prohibiting possession of "brass knuckles" and other "deadly weapons," which were "wicked" and "mischievous devices").

prohibition, which forbade the concealed possession of "brass or other metal knuckles," was intended, according to one senator, "to apply to the criminal classes in the alleys of Washington...." Senate Debate on the Act of July 13, 1892, 23 Cong. Rec. 5788, 5789 (July 6, 1892). Congress later expanded the prohibition to include all "metal knuckles" regardless of how they were carried. Act of July 8, 1932, ch. 465, § 14, 47 Stat. 650 (1932). The most recent amendment to § 22–4514(a) sought to provide a detailed definition of knuckles for the first time, and to ensure the prohibition included knuckles made of materials that are as destructive as metal and can be more difficult to detect with metal detectors.[3] That definition provides:

> (3) "Knuckles" means an object, whether made of metal, wood, plastic, or other similarly durable material that is constructed of one piece, the outside part of which is designed to fit over and cover the fingers on a hand and the inside part of which is designed to be gripped by the fist.

D.C.Code § 22–4501(3) (2008 Supp.).

Appellant claims that this definition is unconstitutionally vague and cannot reasonably be construed to apply to his weapon. But appellant must overcome the "strong presumptive validity that attaches" to duly enacted statutes,[4] and can only prevail on vagueness grounds if the statute is so indefinite that an ordinary person could not reasonably understand that the statute prohibited his conduct. *McNeely*, 874 A.2d at 381–82. Appellant acknowledges that his weapon, often called a "trench knife," "does have a handle that has knuckles on it." However, he argues that because "the handle of the trench knife is not separable from the blade itself," his weapon does not fit § 22–4501's definition of knuckles. Moreover, he claims that a trench knife serves a separate purpose from knuckles, and that the Council did not intend to prohibit its possession *per se.*

We cannot accept appellant's argument because it ignores both the statute's language and its evident purpose. *See D.C. Appleseed Ctr. for Law & Justice v. District of Columbia Dep't of Ins., Sec., & Banking*, 54 A.3d 1188, 1215 (D.C.2012) (rejecting interpretation as "not faithful to the statute's language, overall structure, and purpose"). We agree that the statutory definition of "knuckles" is not ideally worded, but appellant cannot reasonably claim that he had no notice that his conduct was prohibited. *See Brown v. District of Columbia*, 727 A.2d 865, 869 n. 4 (D.C.1999) (statute is not void for vagueness merely because its language is "imprecise" as long as it provides a "comprehensible normative standard") (citations omitted).[5]

---

**3.** In 1967, Congress included non-metallic knuckles ("metallic or other false knuckles") in the statute enhancing punishment for committing a crime of violence while armed, Act of December 27, 1967, Title VI, § 605, 81 Stat. 734 (1967), *see* D.C.Code § 22–3202 (1967), though it did not incorporate non-metallic knuckles into the PPW (a) statute until 2008.

**4.** *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

**5.** We also note that, as a practical matter, appellant should not be surprised that his conduct was subject to sanction when at least one other statute should have put him on notice that his conduct was prohibited. *See* D.C.Code § 22–4504(a) (2001) ("No person shall carry within the District of Columbia either openly or concealed on or about their

The statutory definition aptly describes the handle of appellant's weapon,[6] which readily serves the same purpose as more traditional knuckles. The handle of a trench knife is designed to enhance the force of a blow with a fist.[7] We do not read § 22–4501's requirement that the knuckles be "constructed of one piece" to exclude this solid metal object, designed to augment the impact of a punch and matching the commonly understood description of knuckles, merely because it incorporates a nine-inch blade.[8] To do so would lead to absurd results. *See Dobyns v. United States*, 30 A.3d 155, 159 (D.C.2011) (relying upon plain meaning of statute where doing so would not produce absurd results). The addition of the blade makes the weapon more versatile and more lethal, combining the dangerous features of knuckles with those of knives designed for use in hand-to-hand combat.[9] Exempting this weapon from the reach of § 22–4514(a) would have the perverse effect of prohibiting possession of only the least dangerous versions of knuckles.[10]

Adopting appellant's restrictive interpretation would frustrate the Council's intent to extend the long-standing prohibition to "weaponized knuckles" constructed to "cause just as much physical harm as metal knuckles that are already prohibited under the Districts [sic] criminal code." Testimony of Joshua Ederheimer, Ass't Chief, Metropolitan Police Dep't, before the D.C. Council Comm. on Pub. Safety

---

6. person . . . any deadly or dangerous weapon capable of being so concealed."). There is no denying that appellant's weapon was a deadly or dangerous weapon.

6. At least one other court has concluded that trench knives fall under the relevant statute prohibiting possession of knuckles. *State v. Neighbors*, 21 Kan.App.2d 824, 908 P.2d 649, 652–54 (1995). Other courts have described such weapons as incorporating knuckles. *See, e.g., Rosas v. State*, 373 S.W.3d 738, 744 (Tex.Ct.App.2012) ("a large-blade knife with brass knuckles incorporated into the handle, which was specifically designed for slashing, jabbing, and punching") (internal quotation marks omitted). By contrast, the Illinois Court of Appeals found that a "push knife," consisting of two metal loops and a blade pointing outward from the portion meant to cover the top of the hand, did not qualify as knuckles, in part because there was no way to employ the weapon to punch without first stabbing with the blade. *People v. Kohl*, 364 Ill.App.3d 495, 301 Ill.Dec. 491, 847 N.E.2d 150, 155–56 (Ill.App. 2d Dist.2006).

7. The trench knife, also known as a "knuckle knife," "combines the attributes of the dagger and the knuckle duster, having both a blade and a knuckle guard *with which to strike* . . . . [D]uring World War I the knuckle knife was adopted officially by the United States for trench fighting." STEPHEN BULL, ENCYCLOPEDIA

OF MILITARY TECHNOLOGY AND INNOVATION 145 (2004) (emphasis added).

8. The legislative history of §§ 22–4501 and –4514 suggests that the terms "other similarly durable material that is constructed of one piece" and "the inside part of which is designed to be gripped by the fist" were meant to distinguish "weaponized knuckles" from jewelry in the form of multi-finger rings used only for adornment. *See* Letter from Laura E. Hankins, Special Counsel to the Director, the Public Defender Service for the District of Columbia, to Phil Mendelson, Chairman of the Committee on Public Safety and the Judiciary (June 12, 2008), *as reprinted in* D.C. Council Comm. on Pub. Safety and the Judiciary, Comm. Report on Bill 17–627, "Title 22 Amendment Act of 2008," L17–0390, Period 17 (July 11, 2008).

9. "Right at the outset trench knives were introduced by both sides during World War I, so that the common soldier was once again equipped with a knife designed primarily for combat." HAROLD L. PETERSON, DAGGERS AND FIGHTING KNIVES OF THE WESTERN WORLD: FROM THE STONE AGE TILL 1900 80 (1968); *see also* STEPHEN BULL, ENCYCLOPEDIA OF MILITARY TECHNOLOGY AND INNOVATION 145 (2004).

10. Nor does it matter in our view that the grip of this otherwise solid weapon has an ornamental wooden covering.

and the Judiciary, Comm. Report on Bill 17–627, "Title 22 Amendment Act of 2008," L17–0390, Period 17 (July 11, 2008). The Council clearly viewed knuckles as an "inherently dangerous" weapon. *See Diggs v. United States*, 966 A.2d 857, 860 (D.C. 2009) (distinguishing "inherently dangerous" weapons prohibited by § 22–4514(a) from other objects whose possession is only prohibited, pursuant to § 22–4514(b), when carried with unlawful intent). Adding a lethal blade to the knuckles certainly does not make them any less dangerous.

■ "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).[11] Accordingly, we hold that in these circumstances § 22–4501 is " 'not lacking in fair warning such that men of common intelligence must necessarily guess at its meaning and differ as to

its application ....' " *McNeely*, 874 A.2d at 383 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). It therefore is not unconstitutionally vague.[12]

## B. The Second Amendment

Appellant also asserts that the conviction violates his Second Amendment right to keep and bear arms. We need not address this claim at length. Appellant carried the weapon inside the waistband of his pants, hidden beneath his shirt. As we have previously held, there is no Second Amendment right to carry a concealed weapon. *Gamble v. United States*, 30 A.3d 161, 164–66 (D.C.2011).[13]

## III. Conclusion

The judgment of the Superior Court is hereby

*Affirmed.*

11. Appellant nevertheless urges a facial challenge upon us, claiming that the language of § 22–4501 is overbroad because it potentially criminalizes possession of innocent household items. Broad challenges of this sort are generally disfavored because they require "relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand." *Sabri v. United States*, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004). This is not one of the "limited settings" in which an overbreadth challenge has been entertained. *Id.* at 609–10, 124 S.Ct. 1941 (citing free speech, right to travel, abortion, and legislation under § 5 of the Fourteenth Amendment as rare exceptions); *see also Gamble v. United States*, 30 A.3d 161, 167 (D.C.2011); *Plummer v. United States*, 983 A.2d 323, 338 (D.C.2009).

12. Given the clarity of the Council's purpose, we need not resort to the rule of lenity or the canon of constitutional avoidance when interpreting §§ 22–4501, –4515. *See Mack v. United States*, 6 A.3d 1224, 1233–34 (D.C.2010) (declining to apply either canon of statutory construction where legislative intent is evident).

13. The government also suggests that the longstanding prohibitions on possession of knuckles across the country provide a historical basis for concluding that knuckles do not fall within the scope of the Second Amendment's protection of the right to "keep and bear arms." We do not reach the issue here. Nor do we reach the question of whether the Second Amendment extends beyond the confines of the home.