2014 VT 62

## State of Vermont v. Aidan Brunner

[99 A.3d 1019]

No. 13-239

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed June 20, 2014

*Michael R. Kainen*, Orange County Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Jeff Fucci*, Legal Intern, Montpelier, for Defendant-Appellant.

¶ 1. **Robinson, J.** Defendant Aidan Brunner appeals his conviction for possession of brass knuckles or a similar weapon with intent to use it, 13 V.S.A. § 4001, arguing that the implement at issue is neither brass knuckles nor a similar weapon under § 4001. We affirm.

¶ 2. Following an altercation at the Tunbridge World's Fair that allegedly culminated in defendant slashing the face of another person with the implement in question, defendant was charged with one count of aggravated assault with a deadly weapon, 13 V.S.A. § 1024(a)(5), and one count of possession of brass knuckles or a similar weapon with intent to use it, 13 V.S.A. § 4001. Section 4001 of Title 13 makes it a crime to "possess[] a slung shot,[1] blackjack, brass knuckles, or similar weapon, with intent so to use it." After his arraignment, defendant filed a motion to dismiss the charge under § 4001 on the grounds that the weapon he possessed was not a weapon listed in the statute nor similar to the weapons

---

[1] Slung shot is defined by one dictionary as: "a striking weapon consisting of a small mass of metal or stone fixed on a flexible handle or strap." Webster's New Collegiate Dictionary 1087 (1981).

listed. In his motion, defendant argued that because the statute does not define brass knuckles, it is ambiguous and should be interpreted narrowly and in his favor, according to the rule of lenity. He further argued that the statute is void for vagueness. The trial court held a hearing on defendant's motion on March 20 and 21, 2013.

¶ 3. At the motion hearing, the trial court observed a photograph of the weapon and inspected it in chambers. On April 24, 2013, the court issued a written decision denying defendant's motion. In its written decision, it described the weapon as follows:

> [T]he Weapon is comprised of two curved pieces of flat metal that are riveted together. There is a space of between 1/8 and 1/4 of an inch between the two metal sheets. At each end of the riveted metal pieces, a blade is affixed between the two sheets. When opened, the blades follow the curve of the metal sheets. When retracted, the blades fold into the hollow area between the metal sheets.
>
> The center of the Weapon is clearly designed as the area in which the weapon is to be gripped. At that juncture, there is a slot that permits the wielder to insert his or her fingers and hold the Weapon by hand. The concave curve of the metal fits against the palm of the hand. The grip is formed into an opposing convex curve that allows the fingers to grasp the Weapon. At the slotted grip, both flat pieces of metal surround the hand. As a result, when grasped, one section of the Weapon is within the closed grip of the fist, and the remaining portions of the flat metal pieces form a bar that protrudes along in the front of the fingers/knuckles. The bar is comprised of approximately seventeen tightly serrated teeth. The ridges are about one-eighth of an inch high and the points are sharp.

The following is a photograph of the weapon.

¶ 4. The court explained that the plain meaning of the statute supports the conclusion that the weapon is covered by § 4001. The court noted that the "common understanding of 'brass knuckles' is a metal object, that is gripped in a fist, that has metal portions covering the fist (near the knuckles), and that is designed to enhance the force and effect of a punch." It concluded that the weapon here has those attributes and would "significantly augment a thrown punch." This conclusion, the court explained, is supported by dictionary definitions of "brass knuckles" as well as cases from other states. The court noted that, even assuming that the weapon cannot be considered brass knuckles, it "certainly is a weapon 'similar' to brass knuckles."

¶ 5. The court further concluded that the rule of lenity does not apply because the statute clearly applies to the weapon. The rule of lenity, it explained, applies only once a statute is found to be ambiguous. Finally, the court concluded that the statute is not unconstitutionally vague because the weapon falls within the statute's "core meaning."

¶ 6. Defendant pled nolo contendere to an amended charge of simple assault in violation of 13 V.S.A. § 1023(a)(1) and entered a conditional plea of nolo contendere on the charge of possession of brass knuckles or a similar weapon with the intent to use it in violation of 13 V.S.A. § 4001, reserving his right to appeal that conviction.

¶ 7. The only question on appeal is whether § 4001 applies to the weapon found in defendant's possession. Because this is a question of law, we review it de novo. *State v. Therrien*, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129 ("The interpretation of a statute is a question of law that we review de novo."). We will not disturb the trial court's factual findings with respect to the weapon unless clearly erroneous. *State v. Sutphin*, 159 Vt. 9, 11, 614 A.2d 792,

793 (1992) ("We will not disturb a trial court's findings unless they are unsupported by the evidence or are clearly erroneous.").

¶ 8. Defendant argues on appeal that because the statute does not explicitly define brass knuckles, its application is ambiguous or unclear and the rule of lenity should therefore direct courts to interpret it narrowly.[2] He points to dictionary definitions, the fact that the term "knuckles" is plural, and cases from other states to suggest that a defining design component of brass knuckles is rings or holes for individual fingers. He argues that in light of brass knuckles' historical roots, a weapon's primary purpose must be to punch, with its damage exacted by impact, if it is to be considered brass knuckles. He also contends that the Legislature made it clear that § 4001 should be narrowly confined to weapons with these particular design elements and primary use because it enacted a different and broader provision regulating dangerous weapons. See 13 V.S.A. § 4003.

¶ 9. Finally, defendant argues that in light of the four blades on the device, its primary purpose is cutting, and it is therefore more properly characterized as a knife — an instrument with a legitimate primary purpose other than as a weapon. According to defendant, the opening for the wearer's hand is merely the knife's handle and the portion that covers the knuckles serves the legitimate purpose of guarding the hand when the blades are being used. Defendant argues that under the trial court's approach any object could be similar to brass knuckles if used to strengthen a punch, including a gripped coffee mug or shovel handle.

¶ 10. The State argues that the language in § 4001 addressing "other similar weapons" is evidence that the statute was intended to be broadly applied. It points to the variety of weapons found to be brass knuckles by other state courts to suggest that brass knuckles come in many shapes and sizes and could have other legitimate uses.

¶ 11. ██ ██ This is the Court's first occasion to interpret § 4001. "When interpreting a statute our goal is to give effect to the intent of the Legislature, and to do so we first look at the plain, ordinary meaning of the statute." *State v. Eldredge*, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816. We generally interpret penal

---

[2] Defendant did not argue below, or before this Court, that the weapon had to be made of brass. See *infra*, ¶ 15.

statutes strictly, "but not so strictly as to defeat the legislative purpose in enacting the law or to produce irrational and absurd results." *In re Jones*, 2009 VT 113, ¶ 7, 187 Vt. 1, 989 A.2d 482 (quotation omitted). Under the rule of lenity, we resolve ambiguity in statutory language in favor of the defendant but will not apply the rule if the statute is clear and unambiguous. *State v. LaBounty*, 2005 VT 124, ¶ 4, 179 Vt. 199, 892 A.2d 203.

¶ 12. ■ We conclude that § 4001 applies to the weapon here. The statute does not define "brass knuckles," and the legislative history of its enactment is scant. Our conclusion is, however, supported by common understandings of the term "brass knuckles." Defendant points to, and the trial court cited, numerous dictionary definitions of "brass knuckles" to determine its "plain, ordinary meaning." These definitions illustrate, although not exhaustively, the core elements of brass knuckles: a device designed to be gripped in a clenched fist, that fits over the knuckles, and that is designed to increase the damage caused from a strike of the fist. See, e.g., Am. Heritage Coll. Dictionary 170 (3d ed. 1993) ("A metal chain or a set of rings attached to a bar that can be fitted over the fingers to increase the impact of a blow with the fist."); Webster's New Int'l Dictionary 327 (2d ed. 1961) ("A metal weapon fitting over the front of the doubled fist, often with a projecting bar.").

¶ 13. The weapon here shares those basic elements. The trial court found that the weapon is made of a number of metal components riveted together. As the trial court found, the shape and construction of the weapon are such that "when grasped, one section of the Weapon is within the closed grip of the fist, and the remaining portions of the flat metal pieces form a bar that protrudes along in the front of the fingers/knuckles." It is apparent from the hole for the wearer's hand and the curves of the weapon's design that it may be used to inflict a blow with a fist when grasped as designed. When used in this way, the wearer's hand is protected — and the damage inflicted on the victim is increased — by seventeen sharply serrated teeth one-eighth of an inch high.

¶ 14. We are not persuaded by defendant's argument that, notwithstanding its design and construction, § 4001 does not apply because the implement is intended for cutting rather than increasing the impact of a punch. He relies on the decision of the New

York Criminal Court in *People v. Singleton*, 487 N.Y.S.2d 268 (Crim. Ct. 1985), for the proposition that the weapon should be defined by its primary purpose. In that case, the weapon was made of two connecting leather straps, one that covered the knuckles and fist, to which metal spikes were fastened. The court, in addition to looking to dictionary definitions, considered three additional factors: (1) whether the instrument would come into contact with the victim's body when used in a punching fashion, (2) whether the instrument was designed to readily be used offensively against the human body, and (3) whether the design is such that the instrument cannot "reasonably be put to any use other than to enable the wearer to inflict a blow with a fist covered by metal or pieces of metal." *Id.* at 269-70. The court concluded that the weapon in question was brass knuckles for the purposes of the charging document, reasoning that the metal spikes would come into contact with a victim if used, that the instrument was readily usable as a weapon, and that it was apparent from the design that this was the instrument's only reasonable use. *Id.* at 270. The first two factors identified by the court in *Singleton* are consistent with our own understanding of the essential features of "brass knuckles." The *Singleton* court's analysis undermines defendant's suggestion that brass knuckles must have individualized knuckle holes and a design that increases the damage wrought by a blow from a fist through heightened blunt impact, rather than penetration from blades or spikes.

¶ 15. ▉ Defendant urges this Court to focus on the third prong of the *Singleton* test, and to consider whether the device can reasonably be put to other legitimate uses. We decline to adopt that factor because, as the trial court noted, it unnecessarily narrows the definition of brass knuckles. Applying a "reasonable use" standard to weapons of this sort would lead to the absurd result of excluding weapons with added components that, while ostensibly providing some reasonable and legitimate use for the weapon, also increase their brutality when used to inflict a blow with a fist. See *Thompson v. United States*, 59 A.3d 961, 965 (D.C. 2013) (stating that to conclude that a "trench knife" — a nine-inch blade with four metal rings attached to the handle — is not knuckles merely because it incorporates a blade would lead to absurd results). The statute is not limited to instruments that may reasonably be used for other purposes when it is apparent they are also designed to augment a punch, any more than it is limited

to only those weapons made of brass. See *id.* (exempting weapons from the definition of "knuckles" merely because they have blades "would have the perverse effect of prohibiting possession of only the least dangerous versions of knuckles"). That does not mean people can be convicted for possessing implements to be used solely for lawful purposes; 13 V.S.A. § 4001 requires that an individual possess brass knuckles or similar weapon "with intent so to use it."

¶ 16. This conclusion is further supported by cases from other jurisdictions recognizing that weapons that do not bear the traditional four-ring brass knuckles design and can be used for other purposes may nonetheless be considered brass knuckles. For instance, in *Small v. Bud-K Worldwide, Inc.*, the United States District Court for the Eastern District of New York found that a keychain in the shape of a cat was "metal knuckles" under a New York law that did not otherwise define the term. 895 F. Supp. 2d 438, 451 (E.D.N.Y. 2012). The keychain was made of metal, with triangular metal ears and two holes each large enough to fit a finger through. The court, persuaded by *People v. Laurore*, 926 N.Y.S.2d 346 (Sup. Ct. 2011), a New York case involving a keychain of the same design, stated that "a punch would certainly be augmented by the use of the Black Cat Keychain as it is clearly designed to increase the injuries inflicted when it is used" and concluded that it was knuckles despite the fact that it could also be used as a keychain. *Id.* at 450-51.

¶ 17. ■ Finally, we reject defendant's argument that because the weapon at issue in this case could be classified as a "dangerous" weapon regulated by a separate statute, 13 V.S.A. § 4003, it cannot be considered to be "brass knuckles or similar weapon" for purposes of § 4001. The same conduct can potentially be subject to regulation under multiple statutes. *All* of the weapons listed in § 4001 could be characterized as dangerous weapons and could support prosecution, and lesser penalties, pursuant to § 4003. The Legislature has made the use, or possession with intent to use, of a subset of dangerous weapons subject to potentially more onerous sentences — imprisonment up to five years — than others. The question is whether this weapon — clearly a dangerous weapon pursuant to § 4003 — is in that subset.

¶ 18. ■ ■ For the above reasons, we conclude that it is, and agree with the trial court that the rule of lenity does not apply in

this case. Ambiguity exists where a statute is capable of more than one reasonable interpretation, each vying to define a term to the exclusion of other potential interpretations. See *State v. Thompson*, 174 Vt. 172, 177 n.3, 807 A.2d 454, 459 n.3 (2002) (concluding that Sex Offender Registration Act, a penal statute, is not ambiguous because is capable of only one reasonable interpretation). Here, that the statute applies to a range of weapons that may have distinct characteristics but share the common elements of brass knuckles does not make the statute ambiguous, just as the use of "firearm," which includes "pistol, revolver, rifle, gun, machine gun or shotgun" does not render a statute ambiguous. 13 V.S.A. § 4016(a)(3).

¶ 19. Finally, we do not reach defendant's argument that the trial court erred in not requiring the State to demonstrate the requisite intent to use the weapon. That argument was not raised below and therefore was not preserved for appeal. *State v. Robitaille*, 2011 VT 135, ¶ 32, 191 Vt. 91, 38 A.3d 52.

¶ 20. For these reasons, we affirm the trial court's denial of defendant's motion to dismiss the charges under 13 V.S.A. § 4001.

*Affirmed.*