NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 48

No. 2015-296

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Julianne Graham | January Term, 2016 |

Michael S. Kupersmith, J.

William H. Sorrell, Attorney General, and David Tartter, Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

Brooks G. McArthur of Jarvis, McArthur & Williams, Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** The State appeals the dismissal of three counts of sexual exploitation of a minor, in violation of 13 V.S.A. § 3258. The charges were filed against defendant, a high school employee, based on her having engaged in sexual acts with a student over the summer break between defendant's school contracts. The issue is whether the circumstances of this case support the charges. We conclude that they do not, and affirm.

¶ 2. In reviewing the grant of a motion to dismiss, "we consider whether the evidence, taken in the light most favorable to the State, excluding modifying evidence, would fairly and reasonably tend to show defendant committed the offense, beyond a reasonable doubt." State v. Baron, 2004 VT 20, ¶ 2, 176 Vt. 314, 848 A.2d 275 (quotation omitted). The salient facts are not in dispute. Beginning in August 2012, defendant was employed by Chittenden South

Supervisory Union (CSSU) for each of three consecutive years at Champlain Valley Union High School (CVU). During the 2012-2013 school year, she was employed as a paraeducator. During the 2013-2014 and 2014-2015 school years, defendant was employed as a program assistant. She worked with the putative victim, K.S., in a school program during the 2013-2014 school year. In May 2014, defendant's supervisors told her that she could no longer work with K.S. because of concerns that she was spending an inappropriate amount of time with him to the detriment of the other students in the program. K.S. was transferred to a different program, at which point defendant no longer had direct supervision over him.

¶ 3. During each of the years defendant worked at CVU, she was hired as a full-time "school-year employee" under the collective bargaining agreement. This classification meant that she was employed on a year-to-year basis, with the employment commencing two days before the students started school and ending one day after the last day of instruction, for a total of less than 200 days per year.

¶ 4. Initially, in May 2014, defendant was advised that her position at the school had been eliminated for the following year. Later that month, however, defendant received a letter stating that CSSU would be able to retain her services for the following school year. In response to the letter, defendant confirmed in writing her intent to work for CVU during the 2014-2015 school year.

¶ 5. At defendant's option, employment benefits were not extended to defendant beyond the 2013-2014 school year, except for certain benefits that did not require her to make premium payments. Defendant was not offered a summer position and thus was neither employed by CSSU nor given any supervisory role over students during the summer of 2014. On August 25, 2014, defendant resumed employment at CVU under a new contract with CSSU.

¶ 6.    In February 2015, the State filed an information that, in relevant part, charged defendant with three counts of sexual exploitation of a minor, in violation of 13 V.S.A. § 3258(a), which provides as follows:

> (a) No person shall engage in a sexual act with a minor if:
>
>  (1) the actor is at least 48 months older than the minor; and
>
>  (2) the actor is in a position of power, authority, or supervision over the minor by virtue of the actor's undertaking the responsibility, professionally or voluntarily, to provide for the health or welfare of minors, or guidance, leadership, instruction, or organized recreational activities for minors.

The information alleged that "on or about the summer of 2014" defendant engaged in sexual acts with a minor at least forty-eight months younger than her "while the defendant was in a position of supervision over the minor by undertaking the responsibility to provide for the instruction of minors."[1]

¶ 7.    Defendant filed a motion to dismiss the sexual-exploitation counts for lack of a prima facie case pursuant to Vermont Rule of Criminal Procedure 12(d), asserting that the State would be unable to prove beyond a reasonable doubt that defendant: (1) was in a position of supervision over K.S. during the summer of 2014; (2) was undertaking the responsibility to provide for the instruction of minors; or (3) abused her position of supervision over K.S. to engage in a sex act.

¶ 8.    Following a motion hearing in which three witnesses testified for the State, the criminal division of the superior court granted defendant's motion to dismiss. The court ruled that the plain meaning of § 3258(a) requires the actor to be in a position of power, authority, or supervision at the time of the sex act, and that defendant was not employed by CSSU at the time of the charged sex acts. The court acknowledged that a defendant need not be engaged in a

---

[1] The information further alleged that defendant abused her position of supervision over K.S. in order to engage in a sexual act with him, in violation of § 3258(c), which permits an enhanced penalty for the actor's abuse of the position of power, authority, or supervision to attain the sexual act. This provision is not at issue in this appeal.

specifically charged supervisory task at the exact time of the sex act. But, according to the court, although a school employee in a position of authority could be charged for sex acts with students occurring during the school year outside of school hours, criminal liability under the statute does not extend to situations, such as this, where defendant was not employed by the school, and thus not in a position of authority, at the time of the charged sex acts.

¶ 9. Pursuant to Rule 12(d)(2), a trial court must dismiss an information if the State "does not establish by affidavits, depositions, sworn oral testimony, or other admissible evidence that it has substantial, admissible evidence as to the elements of the offense challenged by the defendant's motion . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial." The State "need only show that it has enough evidence to go to the jury on the issue raised by the defendant—that is, taking the evidence in its most favorable construction to the state it reasonably tends to show defendant's guilt beyond a reasonable doubt." Reporter's Notes, V.R.Cr.P. 12. The question of whether the State has met its burden is one of law, which we review de novo. State v. Valyou, 2006 VT 105, ¶ 4, 180 Vt. 627, 910 A.2d 922 (mem.).

¶ 10. The State argues on appeal that, under the circumstances of this case, the trial court erred by not allowing a jury to determine whether defendant was in a position of supervision over the minor pursuant to § 3258(a) by virtue of defendant's undertaking the responsibility to provide for the instruction of minors. The State breaks this argument into two parts. First, the State argues that whether she was an employee of CSSU during the summer of 2014 was a factual question that should have been left for a jury to decide. In support of this argument, the State notes for the first time on appeal that defendant would not have been entitled to unemployment compensation during the summer of 2014 because she had "reasonable assurance" of employment at CVU for the 2014-2015 academic year. See 21 V.S.A. § 1343(c)(1) (providing that, with respect to services performed in instructional capacity at educational institution, unemployment benefits are not available during period between two

4

successive academic years). The State also notes in support of this argument that during the summer of 2014 defendant continued to receive certain employment benefits for which she did not pay any premiums. Apparently, she was covered under the CSSU's life insurance and long-term disability policies, as well as the Vermont Municipal Retirement Plan, although she was not receiving contributions under the plan during that period because she was not under contract and being paid a salary. Finally, the State notes that defendant "may have been subject to certain school policies during the summer."

¶ 11. We find no merit to this argument. The evidence, viewed most favorably to the State, supports the trial court's findings that defendant was a school-year employee who was not under contract with CSSU during the summer of 2014 and had no supervisory responsibilities for CVU students at that time. Even assuming defendant could not have collected unemployment benefits during the summer of 2014 and continued to receive carryover employment benefits for which she paid no premiums, that did not make her an employee of CSSU at that time. Accordingly, the trial court did not err by not submitting to a jury the question of whether defendant was an employee of CSSU during the summer of 2014.

¶ 12. The second part of the State's argument is more subtle, and the answer is less obvious. The State contends that whether or not defendant was an employee of CSSU during the summer of 2014 is not dispositive of whether she was in a position of supervision over the minor "by virtue of" her having undertaken responsibility to instruct minors during previous school years. In the State's view, the trial court misread the statute by assuming that the only way defendant could have been in a position of supervision over K.S. by virtue of having undertaken instructional responsibility for minors is by being an employee of the school at the time of the charged sex acts.[2] Parsing the statutory language, the State acknowledges that the Legislature's

---

[2] The State acknowledges that the information in this case charged defendant with being in a position of supervision, as opposed to power or authority. The State asserts, however, that the three words are "practically synonymous," and argues that, to the extent this Court concludes

choice of the present tense "is" in the first sentence of § 3258(a) means that the defendant must be in a position of power, authority, or supervision at the time of the charged sex act. The State contends, however, that the position of power, authority, or supervision may have been reached "by virtue of" defendant having undertaken instructional responsibilities prior to the charged sex act but no longer remaining at the time of the act. According to the State, this construction of the statute is bolstered by the fact that the statute governs not only professionals but also volunteers who may have a less defined role with respect to minors covered under the statute. In the State's view, it is a jury's role to determine whether a particular defendant remained in a position of power, authority, or supervision at the time of the charged offense by virtue of having undertaken past instructional responsibilities.

¶ 13. The State reads too much into the statute. There is criminal liability under § 3258, in relevant part, only if "the actor <u>is</u> in a position of . . . supervision over the minor <u>by virtue of</u> the actor's <u>undertaking</u> the responsibility" to provide guidance or instruction for minors. 13 V.S.A. § 3258(a)(2) (emphasis added). The State agrees that the actor must be in a position of supervision at the time of the sex act, but contends that the Legislature's use of the gerund "undertaking" does not preclude construing the statute to include circumstances in which the actor gained the position of supervision by virtue of having undertaken past instructional responsibilities. In so arguing, the State notes that the gerund form of the verb need not indicate the present tense—for example, as in, "thank you for reading my brief." Tellingly, in making this argument, the State consistently uses the verb phrase "having undertaken"—a phrase that the Legislature could have used, but did not, and which arguably would have provided some support for the State's position.

___

that defendant may have been in a position of power or authority, but not supervision, over K.S., the matter should be remanded to allow the State to amend its information. Our resolution of this appeal does not fall on any distinction between the three words.

6

¶ 14. We conclude that use of the verb tenses "is" and "undertaking" indicate that the Legislature intended there to be criminal liability under the statute only when the sex act occurred during the time period in which the actor was in a position of supervision and was undertaking the responsibilities that put the actor in a position of supervision. See State v. Brunner, 2014 VT 62, ¶ 11, 196 Vt. 571, 99 A.3d 1019 ("When interpreting a statute our goal is to give effect to the intent of the Legislature, and to do so we first look at the plain, ordinary meaning of the statute." (quotation omitted)). This statutory language requires more than a relationship of special trust arising from a former formal relationship—it requires that the formal relationship be in place at the time of the sex act.

¶ 15. The statute is intended to protect minors between the ages of sixteen and eighteen who are the victims of sex acts perpetrated by persons who are in a position of power, authority, or supervision over the minors by virtue of specified undertakings, thereby creating an imbalance in the relationship that effectively deprives the minors of being able to consent to the sex acts. To be sure, in some instances socially disfavored relationships may not be subject to criminal liability under the statute by limiting its reach to situations where the sex act occurred during the periods in which the actor was in a position of power over the minor and undertaking responsibilities for the guidance or instruction of minors. The State contends that it would be absurd for the Legislature to have intended the statute not to apply in situations where a position of power, authority, or supervision existed at the time of the sex act by virtue of the actor undertaking responsibilities that no longer remained at the time of the act. We disagree.

¶ 16. We cannot say that such a construction makes the statute ineffective or creates absurd results. See id. ("We generally interpret penal statutes strictly, but not so strictly as to defeat the legislative purpose in enacting the law or to produce irrational or absurd results." (quotation omitted)); State v. Fuller, 163 Vt. 523, 528, 660 A.2d 302, 305 (1995) ("[I]t is inappropriate to expand a statute by implication, that is, by reading into it something which is not

7

there, unless it is <u>necessary</u> in order to make it effective." (quotation omitted)). Line-drawing in determining criminal liability is part of the legislative process. It is not irrational or absurd for the Legislature to elect not to leave for jurors to determine at what point an actor was no longer in a position of power, authority, or supervision after the responsibilities upon which that position was attained had ended. The Legislature could have reasonably elected not to create potentially open-ended criminal liability based on responsibilities undertaken in the past. If the Legislature had intended to create criminal liability under § 3258 in situations where a position of power was attained by virtue of the actor's undertaking responsibilities that no longer remained at the time of the sex act, it could have said so. See, e.g., N.H. Rev. Stat. Ann. § 632-A:2(I)(g) (stating that person is guilty of aggravated felonious sexual assault if person engages in sexual penetration with another person during course of therapeutic or medical treatment or "within one year of termination of that therapeutic or treating relationship"); Tex. Pen. Code Ann. § 22.011(b)(9) (providing that sexual assault is without consent if actor is health care provider who causes patient or former patient to submit to assault by exploiting patient's dependency).

¶ 17. At most, from the State's perspective, the statute is ambiguous. See <u>Brunner</u>, 2014 VT 62, ¶ 18 ("Ambiguity exists where a statute is capable of more than one reasonable interpretation, each vying to define a term to the exclusion of other potential interpretations."). But even if we were to consider the statutory language in § 3258(a) to be ambiguous, we would construe the criminal statute narrowly, as long as that construction did not render the statute ineffective or lead to absurd or irrational results. "In interpreting a criminal statute, the rule of lenity requires us to resolve any ambiguity in favor of the defendant." <u>State v. LaBounty</u>, 2005 VT 124, ¶ 4, 179 Vt. 199, 892 A.2d 203; see also <u>Brunner</u>, 2014 VT 62, ¶ 11 (same).

¶ 18. We emphasize that our construction of § 3258(a) does not suggest the absence of criminal liability under the statute in situations where the actor was presently undertaking

8

responsibilities for minors but the sex act occurred off-hours on weekends or during school breaks when those responsibilities remained. Nor does it suggest that liability under the statute is restricted to situations in which the minor is in a class or activity directed by the actor.[3] Liability exists under § 3258(a) as long as the actor is in a position of power, authority, or supervision by virtue of undertaking to provide guidance, leadership, or instruction, which could take many forms. Cf. Carter v. State, 775 So. 2d 91, 96 (Miss. 1999) (stating that no language in statute criminalizing sexual penetration of minor by person in position of trust or authority "would limit the meaning to a student who is in a specific class of the teacher"); State v. Kaster, 663 N.W.2d 390, 395 (Wis. Ct. App. 2003) (upholding conviction under statute criminalizing sexual assault of student by school staff person where evidence indicated that even though swimming season had ended defendant coach continued swimming activities and provided services during time of assault).

¶ 19. Criminal liability does not extend to defendant in this case, however, given the temporal restrictions contained in § 3528(a). Cf. People v. Lewis, 839 N.W.2d 37, 42 (Mich. Ct. App. 2013) (reversing dismissal of third-degree sexual conduct charge based on conclusion that plain language of statute "does not contain any temporal requirement regarding the timing of the sexual penetration").

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[3] By this description, we are not deciding whether defendant would have violated the statute by engaging in sexual activity with K.S. after she no longer had any direct responsibility over him during the school year. That determination would be based on a factual analysis we have not considered.