### Claire Potvin v. Champlain Cable Corp.

[687 A.2d 95]

No. 95-385

Present: **Allen, C.J., Gibson, Dooley,**[1] **Morse and Johnson, JJ.**

Opinion Filed October 18, 1996

---

[1] Justice Dooley heard oral argument in this case but did not participate in the decision.

*Leslie C. Pratt*, Montpelier, for Plaintiff-Appellant.

*Coddy Marx, Patricia M. Sabalis* and *Anita R. Tuttle* of *Downs Rachlin & Martin*, Burlington, for Defendant-Appellee.

**Johnson, J.** This employment discrimination case raises two important issues: (1) whether an employee whose physical impairment limits her ability to work certain hours may be "substantially limit[ed]" for purposes of the Fair Employment Practices Act (FEPA), 21 V.S.A. § 495d(5)(A), and (2) whether federal labor law preempts a state-law disability discrimination claim brought by an employee who is covered by a collective bargaining agreement. The trial court held that plaintiff's claim is not preempted by federal law, but granted summary judgment to defendant on the ground that plaintiff's impairment did not substantially limit her ability to work. We agree that plaintiff's claim is not preempted, but conclude that plaintiff has made a sufficient factual showing to support her claim that she was substantially limited in her ability to work. Accordingly,

we reverse the court's decision granting summary judgment to defendant.

## I.

Plaintiff has been employed by defendant Champlain Cable Corporation since 1977. In 1988, she took a position as a first-shift expediter and remained in that position until October of 1990, when she discovered that she had ulcerative colitis. As a result of her medical condition, plaintiff underwent three surgeries in a procedure known as a colectomy, which ultimately resulted in the removal of her large intestines.

Plaintiff's first surgery occurred in November 1990 and caused her absence from work until January 14, 1991. When she returned to work, she continued in her position as a first-shift expediter. On February 20, 1991, plaintiff underwent a second surgery, the recovery from which resulted in her absence from work until May 1991. She once again returned to work as a first-shift expediter. After plaintiff returned to work, however, the company assigned her to the second shift, which was scheduled from 3:00 p.m. until 11:00 p.m. According to defendant, plaintiff was moved to the second shift to make defendant's business more responsive to the needs of companies on the West Coast, which do not close business until 5:00 p.m. Pacific Standard Time (8:00 p.m. Eastern Standard Time). Plaintiff, a member of the International Brotherhood of Teamsters, was chosen for the reassignment based on the seniority procedure dictated by the collective bargaining agreement.

In July 1991, plaintiff underwent her third surgery, and in October 1991, plaintiff was released by her doctor to return to work. At that time, plaintiff informed defendant that she could not return to work on the second shift because her physical condition caused her to have excessive bowel movements during the evening hours and required her to take frequent and lengthy restroom breaks. She supported this claim with a letter from her doctor stating that she should return to work the day shift. Plaintiff requested that she be given a first- or third-shift position or, in the alternative, be given a light-duty second-shift position. Defendant refused her request and told her that she could return as a second-shift expediter or not return at all. Five months later, in March 1992, defendant offered plaintiff a position as a spark tester on the third shift, which plaintiff accepted. She is currently employed by defendant as a first-shift utility operator.

In October of 1992, plaintiff filed suit against defendant, alleging that defendant had discriminated against her based on her gender[2] and handicap. Defendant moved for summary judgment, arguing (1) that plaintiff's claims were preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1988), (2) that plaintiff was barred from bringing the suit because she had failed to use the grievance procedure established by the collective bargaining agreement, and (3) that plaintiff had failed to establish that she was a "handicapped individual" for the purposes of FEPA. See 21 V.S.A. § 495d(5)(A) ("handicapped individual" defined as person who "has a physical or mental impairment which substantially limits one or more major life activities"). The trial court held that plaintiff's claim was not preempted, but ruled in favor of defendant on the ground that plaintiff's impairment was not "substantially limiting." The court did not reach defendant's argument that plaintiff had failed to exhaust the remedies provided by the collective bargaining agreement. Plaintiff appealed. Defendant cross-appealed, urging the preemption and exhaustion arguments as alternative bases for the court's decision.

## II.

We begin by considering the court's decision to grant summary judgment to defendant on the ground that plaintiff failed to show that she was a "handicapped individual" as defined by FEPA. See *id.* When reviewing a grant of summary judgment, this Court applies the same standard as the trial court. *Massachusetts Mut. Life Ins. Co. v. Ouellette,* 159 Vt. 187, 189, 617 A.2d 132, 133 (1992). Summary judgment should be granted when, taking all the allegations made by the nonmoving party as true and giving the nonmoving party the benefit of all doubts and inferences, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* "Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . . . The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18, 665 A.2d 580, 583 (1995).

---

[2] Plaintiff conceded below that defendant was entitled to summary judgment on the sex discrimination claim, and that issue is not part of this appeal.

▉ As in any handicapped-discrimination claim brought under FEPA, the "first issue . . . is whether the plaintiff is a 'handicapped individual' and thus within the protection of the Act." *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 163, 624 A.2d 1122, 1129 (1992); see 21 V.S.A. § 495(a)(1) ("It shall be unlawful employment practice . . . [f]or any employer . . . to discriminate . . . against a qualified handicapped individual."). The statute defines a handicapped individual as a person who "has a physical or mental impairment which substantially limits one or more major life activities." 21 V.S.A. § 495d(5)(A). As defendant does not dispute that plaintiff's medical condition is a "physical impairment," the only question to be resolved is whether her impairment is "substantially limiting."

There is no simple test or bright-line rule to aid in answering this question. The statute gives only an imprecise definition: "'Substantially limits' means the degree that the impairment affects an individual's employability. A handicapped individual who is likely to experience difficulty in securing, retaining, or advancing in employment would be considered substantially limited." 21 V.S.A. § 495d(8). Under the Americans with Disabilities Act (ADA), which employs identical language, see 42 U.S.C. § 12102(2) (Supp. II 1990), "substantially limits" has been defined as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3) (1995).[3] Unlike, for example, the regulations governing federal disability benefits, see 20 C.F.R. Pt. 404, Subpt. P, app. 1 (1996), the Equal Employment Opportunity Commission has not developed a "laundry list" of impairments that are considered substantially limiting. 29 C.F.R. Pt. 1630 app. (1995). Rather, the guidelines make clear that the determination must be made on a case-by-case basis. *Id.*

The trial court, in finding that plaintiff was not substantially limited, relied primarily on plaintiff's statement in her interrogatories that she had been able to "perform full time regular duty" since her return to work, and that "she would have been able to perform

---

[3] The relevant language of the ADA is based on that of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701-797b (West 1985 & Supp. 1996), which "prohibits federal agencies from discriminating against 'qualified handicapped persons.'" *Guice-Mills v. Derwinski*, 967 F.2d 794, 797 (2d Cir. 1992) (quoting *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1077 (6th Cir. 1988)). The Rehabilitation Act defines a handicapped individual as any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C.A. § 706(8)(B) (West Supp. 1996).

[her] regular duties in [her] prior job even if [she] had been hired back in such a position." Apparently, the court treated this statement as an admission by plaintiff that she was able to work as a second-shift expediter, rather than an assertion by plaintiff that she was "capable of performing the essential functions of the job." 21 V.S.A. § 495d(6). Given plaintiff's consistent position that she was able to perform the requirements of the expediter position, but not able to work the second shift, we are not persuaded that this statement was an admission that plaintiff was in fact capable of working as a second-shift expediter. The interpretation adopted by the trial court is inconsistent with plaintiff's deposition testimony, her doctor's letter advising her to work the first shift, and her supervisor's concession in his deposition that "[i]t was pretty clear from the doctor's notes that [plaintiff] was unable to work second shift." At most the statement is ambiguous, and on defendant's motion for summary judgment we allow plaintiff the benefit of the doubt.

In any event, defendant does not press the argument that plaintiff was capable of working the second shift. Rather, defendant emphasizes plaintiff's return to work after five months as evidence that she was not substantially limited in her ability to work. We note first that plaintiff's return to work on the third (and later the first) shift is unrelated to her claim that she was substantially limited because she was unable to work second-shift hours. From the beginning, plaintiff asked to be moved to the first or third shift, and she has consistently maintained that she was able to work at those times. Moreover, plaintiff claims that her impairment, the need to use the bathroom frequently at certains times of day, continues to the present.

 Assuming, however, that defendant correctly characterizes plaintiff's impairment as lasting only five months, the impairment may nonetheless have substantially limited plaintiff's ability to work. The duration of an impairment is relevant to whether an impairment is substantially limiting. See 29 C.F.R. § 1630.2(j)(2)(ii). Temporary injuries, such as broken or sprained limbs that heal properly within a few weeks, are not considered substantially limiting. See *id.* Pt. 1630 app. Plaintiff's impairment, however, lasted for at least five months, and was the result of a long-term illness that required three separate surgeries. We cannot say, as a matter of law, that plaintiff's disability was too fleeting to be covered by FEPA.

Next, defendant argues that plaintiff was not substantially limited because she was capable of performing her job as an expediter, or any other job, on the first or third shift. This characterization of the case

begs the question; plaintiff was not limited in her ability to perform certain tasks but in her ability to work at certain times. To correct a serious gastrointestinal problem, plaintiff underwent three surgeries that together entailed the removal of her large intestine and the rebuilding of her small intestine. As a result of this treatment, plaintiff's activities were restricted because of her frequent need to use the bathroom. On some days plaintiff needed to use the bathroom as many as thirty times; the need was greater at certain times of the day, specifically the evening hours. This condition understandably posed a significant obstacle to working second-shift hours; unless an employer was willing to accept the fact that she would spend much of her work time in the bathroom, plaintiff was unable to work a second-shift job.

Few courts have considered the issue of whether inability to work at certain times of the day substantially limits a person's employability for purposes of the ADA or analogous anti-discrimination laws. The Second Circuit, however, has held that a nurse who was unable to work before 10:00 a.m. "was a handicapped individual within the meaning of the Rehabilitation Act," because her "illness and medication regime interfered with her ability to arrive at work on time." *Guice-Mills v. Derwinski*, 967 F.2d 794, 797 (2d Cir. 1992). The nurse suffered from severe depression, which combined with the drugs prescribed to treat her condition made it difficult for her to wake in the morning. The district court reasoned that her "impairment falls within the statute even though it interferes with ability to work only during certain hours." *Guice-Mills v. Derwinski*, 772 F. Supp. 188, 198 (S.D.N.Y. 1991); see also *Rhone v. United States Dep't of the Army*, 665 F. Supp. 734, 742 (E.D. Mo. 1987) (noting that employee whose chronic sarcoidosis precluded him from working evening or night shift was substantially limited by his impairments).

The Montana Supreme Court also recently considered this issue in *Martinell v. Montana Power Co.*, 886 P.2d 421 (Mont. 1994). There, the plaintiff, a laboratory technician who worked rotating shifts, was advised by a doctor to rearrange her work schedule to more regular hours. She suffered from endometriosis, a condition in which uterine tissue detaches from the uterus and reattaches to other body tissues and organs. As her condition worsened, her doctor advised that working regular hours would benefit plaintiff by allowing normal sleep patterns, eliminating stress, and minimizing other symptoms. The court concluded that the plaintiff was a handicapped person under the Montana Human Rights Act because her endometriosis substantially limited her employment. *Id.* at 430.

Defendant's reliance on *Zatarain v. WDSU-Television, Inc.*, 881 F. Supp. 240 (E.D. La. 1995), is misplaced. The *Zatarain* plaintiff, a news anchor, delivered three newscasts each evening, at 5:00 p.m., 6:00 p.m., and 10:00 p.m. After beginning fertility treatments, the plaintiff was advised by her doctor to reduce her schedule so that she worked only the 6:00 and 10:00 newscasts, with a rest in between. Her doctor's specific objection, based on the timing of her fertility treatments, was that she should not work three back-to-back evening broadcasts. At most, the court concluded, this "prevented her from holding the particular position of prime-time news anchor at [this station]." *Id.* at 244. *Zatarain* stands for the obvious proposition that not every person who is unable to work a certain schedule is substantially limited. A news anchor who is barred from a specific job because the broadcast schedule interferes with her fertility treatments is not restricted to the same degree as an industrial worker unable to work any job on the second shift.

We see no reason to treat plaintiff differently from an employee who is unable to lift heavy objects or has impaired vision or hearing. The relevant question in any such case is whether the impairment substantially limits the plaintiff's employability. Indeed, the limitation that plaintiff labored under is analogous to one of the EEOC's illustrations of a substantial limitation — an allergy that prevents an employee from working in a high-rise office building. 29 C.F.R. Pt. 1630 app. (1995). In both cases the employee can perform the functions of a job, but only under certain conditions, geographical or temporal. This type of limitation must be treated like any other, and looked at on a case-by-case basis to determine if the individual is "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes" as compared to the average person with similar qualifications. *Id.* Pt. 1630 app.

Here, plaintiff's limitation can be construed as either an inability to perform the class of second-shift jobs or an inability to perform a broad range of different industrial and nonindustrial jobs that require evening or second-shift work hours. Either way, should plaintiff prove her case at trial, she would meet the definition of "substantially limited."

### III.

Because we conclude that plaintiff made a sufficient showing to survive summary judgment on her claim that she was a "handicapped individual" under FEPA, we consider the other arguments urged by

defendant as grounds for summary judgment. Defendant first maintains that plaintiff's claim under FEPA is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1988). Under federal law,

> when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law.

*Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985) (citation omitted). Relying on *Lueck,* defendant argues that plaintiff's FEPA claim is "inextricably intertwined with consideration of the terms of the labor contract," *id.* at 213, and must therefore give way to the demands of § 301.

■ The basis for defendant's argument is that the collective bargaining agreement may be relevant to the question of accommodation. To make a successful discrimination claim, plaintiff must show not only that she was a handicapped individual, but that she was a "qualified handicapped individual" entitled to the protection of FEPA. See 21 V.S.A. § 495(a)(1); *State v. G.S. Blodgett Co.*, 163 Vt. 175, 181, 656 A.2d 984, 988 (1995) (in handicapped-discrimination claim under FEPA, plaintiffs have burden of showing that employee was qualified handicapped individual). A "qualified handicapped individual" is a person "capable of performing the essential functions of the job . . . with reasonable accommodation to his handicap." 21 V.S.A. § 495d(6). Plaintiff suggests two ways in which defendant could have accommodated her: first, that the second-shift expediter position was unnecessary and could have been reassigned to the first shift, or to an off-shift, such as 11:00 a.m. to 7:00 p.m., or, alternatively, that plaintiff could have "bumped" less senior employees from other first- or third-shift positions. As seniority rights of employees are defined by the collective bargaining agreement, a court considering the reasonableness of the latter option would have to consult the collective bargaining agreement. According to defendant, this possibility means that plaintiff's FEPA claim is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," *Lueck,* 471 U.S. at 220, and therefore preempted.

The Supreme Court has not given an expansive interpretation to § 301 preemption of state law claims. See *Livadas v. Bradshaw,* 512 U.S. 107, 122, 114 S. Ct. 2068, 2077 (1994) ("sensible 'acorn' of § 301

pre-emption . . . has sprouted modestly in more recent decisions . . . [but] has not yet become, nor may it, a . . . 'mighty' oak"). Rather, the Court has consistently recognized that § 301 does not "pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lueck*, 471 U.S. at 212. In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Court held that a state law claim of retaliatory discharge was not preempted by § 301, because "resolution of the state-law claim [did] not require construing the collective-bargaining agreement." *Id.* at 407. This was true even though the same set of facts could have been the basis of a dispute under the collective bargaining agreement; "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 410. Recently, the Court again emphasized that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas*, 512 U.S. at 123, 114 S. Ct. at 2078.

Defendant nonetheless maintains that the Court's decision in *Lueck* controls the outcome of this case, and requires us to hold that plaintiff's state law claim is preempted. Defendant reads the Court's decision in *Lueck* too broadly. There, the Court emphasized that the employee's state law claim was defined by the collective bargaining agreement. See *Lueck*, 471 U.S. at 217 (duties imposed and rights established through state tort of bad faith handling of insurance claim derive from rights and obligations established by contract). The employee protections established by FEPA are in no way derived from the collective bargaining agreement; rather, FEPA establishes "rights and obligations, [that are] independent of a labor contract." *Id.* at 212.

■ Defendant's position, that plaintiff loses her rights under FEPA because she is covered under the collective bargaining agreement, contradicts the strong public policy supporting state anti-discrimination laws.[4] See 42 U.S.C. §§ 2000e-5(c) & 2000e-7 (1988) (endorsing state anti-discrimination remedies). The collective bargaining agreement gives plaintiff no protection from discrimination on the basis of her disability. Her right is an independent creation of

---

[4]The Court has recognized this public policy, and in *Lingle v. Norge Div. of Magic Chef, Inc.*, noted approvingly the lower court's statement that "'§ 301 does not pre-empt state anti-discrimination laws.'" *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031, 1046 n.17 (7th Cir. 1987)).

state law, and the Supreme Court has repeatedly recognized that states can confer such nonnegotiable rights on employees. See *Livadas*, 512 U.S. at 123, 114 S. Ct. at 2078 ("§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law"); *Lingle*, 486 U.S. at 409 ("§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements"); *Lueck*, 471 U.S. at 212 ("[Section] 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law. . . . [I]t would be inconsistent with congressional intent . . . to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."). These pronouncements would be meaningless if state law discrimination claims were preempted every time a court needed to consult a collective bargaining agreement in the course of resolving a claim. Indeed, it is difficult to imagine a discrimination claim brought by a union employee that would not tangentially involve a collective bargaining agreement; evaluating employment decisions in a unionized workplace requires understanding the rules relating to seniority, job qualification, layoffs and similar issues.

The Supreme Court has explicitly recognized that "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Lueck*, 471 U.S. at 211. In *Lingle*, the Court noted:

> [A]s a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.

*Lingle*, 486 U.S. at 413 n.12. We conclude that this is such a case. Although the collective bargaining agreement may be relevant to whether plaintiff could be reasonably accommodated, the meaning of the agreement is not central to plaintiff's claim. Defendant has not identified any provision of the agreement that is actually disputed or potentially open to conflicting interpretations. See *Livadas*, 512 U.S.

at 124, 114 S. Ct. at 2078 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). The tangential involvement of the collective bargaining agreement in this case is not sufficient to preempt plaintiff's discrimination claim under FEPA.

### IV.

Finally, we do not accept defendant's argument that plaintiff failed to exhaust the remedies available to her under the collective bargaining agreement. See *Ploof v. Village of Enosburg Falls*, 147 Vt. 196, 200, 514 A.2d 1039, 1042 (1986) (where collective bargaining agreement establishes grievance and arbitration procedures for redress of grievances, employee must at least attempt to exhaust these procedures before resorting to judicial remedies). Although the collective bargaining agreement does state that "[t]he grievance procedure and arbitration provided for herein shall constitute the sole and exclusive method of [resolving] any and all grievances," the agreement defines "grievance" as "any dispute between the Employer and the Union, or between the Employer and any employee concerning the effect, interpretation, application, claim or breach or violation of this Agreement." Plaintiff had no dispute concerning the collective bargaining agreement; the agreement does not protect against discrimination on the basis of a disability. She was not, therefore, required to pursue the grievance procedure. See *Gorski v. Local 134, IBEW*, 636 F. Supp. 1174, 1183 (N.D. Ill. 1986) (where employee's claim does not implicate collective bargaining agreement, no recourse to agreement's grievance procedures is required).

*Reversed and remanded.*