NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 66

No. 2019-233

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Thomas A. Gauthier | April Term, 2020 |

Timothy B. Tomasi, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Rebecca Turner, Appellate Defender, and
  Jonathan Teller-Elsberg, Legal Intern, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **ROBINSON, J.**   Defendant appeals his conviction of violating the Sex Offender Registration Act after he knowingly failed to comply with reporting requirements while released on furlough status. He argues that furlough status is a form of "incarceration," and therefore he fell under the exception to the sex-offender reporting requirements that relieves sex offenders of the reporting requirements "during periods of incarceration." 13 V.S.A. § 5407(e). We conclude based on the plain language of the statute that the reporting requirements apply to furloughed individuals living in the community, and therefore we affirm.

¶ 2.     The facts relevant to this appeal are undisputed. In 2010, defendant was convicted of sexual assault on a victim under sixteen years of age, a crime that subjected him to sex-offender registry requirements under 13 V.S.A. § 5401(10)(A)(i). The Department of Corrections (DOC)

notified him of these requirements. In April 2014, the registry received notice that defendant was released into the community, including his physical and mailing addresses.[1] Defendant confirmed this information in his 2015 annual verification letter, which was received at the registry on August 21, 2015. In July 2016, the registry sent an annual address-verification letter to defendant at the previously reported address. The registry sent a second request in October. Defendant did not file the annual report. Because he knowingly failed to verify his address within ten days of his birthday while on furlough, as required by 13 V.S.A. § 5407(a)(2), the State charged defendant with failing to comply with sex-offender registry requirements for more than five days under 13 V.S.A. § 5409(b).

¶ 3.     Defendant moved to dismiss the charge on the basis that the reporting requirements in 13 V.S.A. § 5407 do not apply to individuals released on furlough. He argued that under § 5407(e), reporting requirements do not apply during "periods of incarceration," and that furlough is legally considered a form of incarceration. The trial court denied the motion to dismiss, and subsequently affirmed its decision on defendant's motion for reconsideration. Defendant entered a conditional plea of no contest, reserving his right to appeal the issue of whether sex-offender registry reporting requirements apply while an individual is on furlough.

¶ 4.     We resolve this question of statutory interpretation without deference to the trial court. State v. Amsden, 2013 VT 51, ¶ 8, 194 Vt. 128, 75 A.3d 612. "When interpreting a statute our goal is to give effect to the intent of the Legislature, and to do so we first look at the plain, ordinary meaning of the statute." State v. Brunner, 2014 VT 62, ¶ 11, 196 Vt. 571, 99 A.3d 1019

---

[1] The Department of Public Safety maintains the registry. 13 V.S.A. § 5402(a). In this opinion, we sometimes use the term "registry" and sometimes refer to the Department of Public Safety depending on the context.

(quotation omitted). "If the plain language is clear and unambiguous, we enforce the statute according to its terms." State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129.[2]

¶ 5. The relevant statute, 13 V.S.A. § 5407(e), states in relevant part: "a person required to register as a sex offender under this subchapter shall continue to comply with this section, except during periods of incarceration, until 10 years have elapsed since the person was released from prison or discharged from parole, supervised release, or probation, whichever is later." (Emphasis added.) The pivotal question in this case is whether "periods of incarceration" includes periods of time when an individual is released into the community on furlough status.

¶ 6. We conclude that furloughed sex offenders living in the community are not "incarcerated" such that they are excepted from the reporting requirements. We base our conclusion on the common understanding of the term "incarceration," the language and structure of the Sex Offender Registration Act, and the purpose of that law. We are unpersuaded by defendant's counterargument that the term "incarceration" includes living in the community on furlough status.

¶ 7. "Incarceration" is not defined in the Sex Offender Registration Act, and therefore we look to its ordinary meaning. See id. § 5401. "Words that are not defined within a statute are given their plain and ordinary meaning, which may be obtained by resorting to dictionary

---

[2] Where a penal statute is ambiguous, the rule of lenity requires that we resolve any doubts in favor of the defendant. State v. Hurley, 2015 VT 46, ¶ 17, 198 Vt. 552, 117 A.3d 433. We have declined to decide in the past whether the rule of lenity applies to the Sex Offender Registration Act. State v. Thompson, 174 Vt. 172, 176 n.3, 807 A.2d 454, 459 n.3 (2002) (noting defendant's rule-of-lenity argument but holding that statute was unambiguous, and noting that "a majority of the states that have construed the sex offender registry statutes in their jurisdictions have found the statutes regulatory, rather than penal, in purpose"). In Fraser v. Sleeper, 2007 VT 78, ¶ 12, 182 Vt. 206, 933 A.2d 246, we concluded that "[s]ex offender registry statutes are remedial rather than penal," but more recently we characterized the Act as penal in nature, see Brunner, 2014 VT 62, ¶ 18. Here, we do not need to address the issue of whether the Sex Offender Registration Act is a penal statute; however, we note that defendant is subject to a penalty of six to twelve months in prison for violating it.

3

definitions." Khamnei v. Burlington Pub. Works Comm'n, 2018 VT 19, ¶ 14, 206 Vt. 550, 183 A.3d 1157.

¶ 8. The ordinary definition of incarceration is confinement in a prison. Black's Law Dictionary defines incarceration generally as the "act or process of confining someone." Incarceration, Black's Law Dictionary (11th ed. 2019). The more common definition, however, speaks specifically to confinement in a prison. See Incarceration, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/incarceration [https://perma.cc/R6LS-2YCH] (defining incarceration as "confinement in a jail or prison"); Incarceration, Lexico, https://www.lexico.com/en/definition/incarceration [https://perma.cc/UJZ2-8YND] (defining incarceration as the "state of being confined in prison; imprisonment"); Incarcerate, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/incarcerated [https://perma.cc/T3Z4-GBTL] (defining incarcerate as "to put or keep someone in prison or in a place used as a prison").

¶ 9. This common definition of incarceration does not encompass furlough, during which a person is released from prison. Furlough is not mentioned in 13 V.S.A. § 5407(e) and is not defined in the Sex Offender Registration Act. However, the term "furlough" generally refers to a period of time during which DOC has "extend[ed] the limits of the place of confinement of an offender"—or in other words, when DOC permits an offender to serve a portion of their sentence outside of the four walls of the prison. 28 V.S.A. § 808(a); see also Furlough, Black's Law Dictionary (11th ed. 2019) (defining furlough as "[a] brief release from prison"). An offender living in the community on furlough status is not incarcerated because they are no longer confined in a prison. Given the ordinary understanding of "incarceration," it would be incongruous to think that a person could be "incarcerated" and reside in the community at the same time.

¶ 10. The statutory scheme as a whole supports our conclusion that an individual released on furlough is not incarcerated for the purpose of § 5407(e). State v. Berard, 2019 VT 65, ¶ 12, __ Vt. __, 220 A.3d 759 (explaining that to determine intent of Legislature, "we must examine and

4

consider fairly, not just isolated sentences or phrases, but the whole and every part of the statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system"). The statutory scheme reflects an understanding that the reporting requirements apply to all sex offenders who live outside of the prison, and that "incarceration" includes only offenders who are physically confined in the prison. We reach this conclusion for three reasons: first, the Act explicitly includes furlough in the definition of "release"; second, it requires DOC to notify an offender of their reporting requirements when the offender is released on furlough; and third, it requires DOC to report an offender's information to the Department of Public Safety when they are released on furlough, but does not require DOC to provide annual address verification.

¶ 11.    The Legislature explicitly included furlough status when defining "release" in the Sex Offender Registration Act. Release is defined as "release from confinement or custody or placement into the community for any reason, including . . . furlough." 13 V.S.A. § 5401(8). This definition is not necessarily determinative in this case, in part because it is used inconsistently throughout the statute.[3] However, in the provisions relevant to this appeal, this definition appears to control. As discussed in more detail below, the statute requires DOC to forward certain information to the Department of Public Safety before "releasing a sex offender from a correctional facility to serve . . . furlough," id. § 5404(a), and requires DOC to inform sex offenders of their obligations, including their duty to register and keep their registrations current under § 5407, "upon the release of a sex offender from a correctional facility," id. § 5406. For the purposes of these two provisions, which inform our understanding of the "periods of incarceration" exception, we conclude that the term "release" is used consistently with the above definition.

¶ 12.    The Act requires DOC to notify offenders of certain requirements when they are released on furlough. Section 5406 states that "upon the release of a sex offender from a

---

[3] For instance, at times "release" refers to a release <u>from</u> furlough or other community supervision, 13 V.S.A. § 5407(a)(8) (emphasis added), or to the offender's release "upon completion of the offender's maximum sentence," id. § 5404(b).

correctional facility," DOC must, among other things, "inform the sex offender of the duty to register and keep the registration current as provided in section 5407 of this title" and "require the sex offender to read and sign a form stating that the duty of the sex offender to register under this section has been explained and is understood." Id. § 5406(1), (3). Given the definition of release as noted above, this section unambiguously requires DOC to provide this notice to offenders when they are released on furlough. The notice provision clearly anticipates that offenders will be subject to reporting requirements upon their release on furlough. See Thompson, 174 Vt. at 175, 807 A.2d at 458 (commenting that § 5407 "requires sex offenders to report to [the Department of Public Safety], upon release from any confinement or supervision of the court, their residence on an annual basis"). It would be anomalous to conclude that the Legislature intended furloughed offenders to receive notice of sex-offender reporting requirements if they were not subject to them.

¶ 13.   Additionally, if we construed the statute as defendant urges, then nobody would make annual reports for offenders living in the community under DOC supervision. DOC is required to make an initial report to the Department of Public Safety upon releasing an offender into the community on furlough, but only the sex offender is required to make an annual report pursuant to § 5407(a)(2). 13 V.S.A. § 5404(a) states, "Upon receiving a sex offender from the court on a probationary sentence or supervised community sentence and prior to releasing a sex offender from a correctional facility to serve probation, parole, furlough, or a supervised community sentence, the Department of Corrections shall forward to the Department [of Public Safety]" certain information concerning the sex offender, including the offender's address, contact information for the office charged with monitoring the offender, and documentation of any treatment of counseling received.[4] Thereafter, DOC is responsible for notifying the Department if

---

[4]   DOC's initial reporting responsibility concerning an offender who is released to the community under supervision is distinct from its obligations before releasing an offender from a correctional facility to the community upon completion of the offender's maximum sentence. In the latter circumstance, the offender is responsible for registering and keeping the registration

6

the offender changes address or employment, enrolls in a postsecondary educational institution, or begins residing with a child under eighteen years old. Id. § 5404(c). DOC is not required to submit annual verifications of the offender's address. Sex offenders subject to the reporting requirements in § 5407 are required to make annual reports to the registry within ten days after their birthdays (or every ninety days for "sexually violent predator[s]"), in addition to reporting if the offender changes name, address, or employment, enrolls in postsecondary education, or begins residing with a child under eighteen years old. Id. § 5407(a). If we read the statute as defendant urges, then the only sex offenders required to make annual reports (or ninety-day reports) would be those who have completed their maximum sentence. This would not be an implausible system—those who have not completed their maximum sentence would presumably remain under DOC supervision without a separate set of reporting requirements. But given the statute as a whole, including especially the requirement that DOC inform offenders of their registry obligations before releasing them to the community on furlough, we do not believe it is the system the Legislature created.

¶ 14.    Our conclusion on this point is further reinforced by the purpose of the sex-offender registry.  We have noted that the "obvious purpose" of the Sex Offender Registration Act is to "provide appropriate authorities with information to assist in the investigation and prevention of sex offenses."  Thompson, 174 Vt. at 176, 807 A.2d at 459; see also State v. Charette, 2018 VT 48, ¶ 8, 207 Vt. 372, 189 A.3d 67 (citing same).  Although the registration and reporting system, as we understand it, includes some redundant reporting—for example, both the furloughed offender and DOC are responsible for reporting changes in the furloughed offender's address and employment—given the purpose of the law, it is substantially more likely that the Legislature adopted a "belt-and-suspenders" approach than that it left gaps in the reporting framework.  It

current, and DOC is charged with informing the offender of this obligation and helping the offender register.  See 13 V.S.A. § 5404(b).

7

follows that the Legislature intended sex offenders to comply with reporting requirements any time they reside in the community, including while on furlough status. See Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 (stating that we examine "the plain meaning of the language used in light of the statute's legislative purpose").

¶ 15. Defendant's reliance on other statutes and case law describing furlough status does not persuade us otherwise. Defendant argues that the statute authorizing furlough provides that the status "shall in no way be interpreted as a probation or parole of the offender, but shall constitute solely a permitted extension of the limits of the place of confinement." 28 V.S.A. § 808(c). He points to the fact that the statutory sections relating to furlough are contained within a chapter relating to supervision of adult inmates at correctional facilities. And he points to various cases in which we have treated offenders on furlough status as essentially incarcerated. See, e.g., Conway v. Cumming, 161 Vt. 113, 116, 636 A.2d 735, 737 (1993); State v. Bogert, 2013 VT 13A, ¶ 23, 197 Vt. 610, 109 A.3d 883.[5]

¶ 16. We find defendant's arguments unpersuasive for two reasons. First, defendant overstates the extent to which the Legislature and this Court have equated incarceration and furlough. The statute defendant relies on says nothing about what does and does not constitute "incarceration"; it describes furlough as extending the "place of confinement." In Conway, we stated that the plaintiff, who was on furlough status, "remained incarcerated." 161 Vt. at 116, 636 A.2d at 737. But that was because the plaintiff still physically resided in the prison: DOC had granted him only "furloughs to be in the community for short visits." Id. at 114, 636 A.2d at 736.[6]

---

[5] Defendant notes that our holding in Conway that a person on furlough is not entitled to a hearing prior to revocation of furlough has come into question, but argues that our discussion of furlough status, and our description that a person on furlough "remained incarcerated," is relevant to the meaning of furlough. Conway, 161 Vt. at 116, 636 A.2d at 737.

[6] Some other furloughed offenders clearly remain incarcerated as well—for instance, an individual who leaves the prison only to visit a critically ill relative or attend a funeral. See 28 V.S.A. § 808(a) (listing some purposes for granting furlough).

And in <u>Bogert</u>, we described furlough as "a status that is even <u>closer to</u> incarceration than parole." 2013 VT 13A, ¶ 23 (emphasis added). We did not suggest that furlough was the same as, or a form of, incarceration.

¶ 17. Second, the statutes and cases relied upon by defendant deal with the status of furlough rather than the location of the furloughed offender. The critical issues in those cases relate to an offender's rights in light of the offender's furlough status, and do not turn on the location of the offender's residence. In contrast, where the offender lives, and not the legal status assigned to the offender, is the central focus of the sex-offender registry. For that reason, the meaning of "incarcerated" in the context of the Sex Offender Registration Act is not necessarily the same as in Title 28. Cf. <u>State v. Powers</u>, 2016 VT 110, ¶ 16, 203 Vt. 388, 157 A.3d 39 (noting that "the term 'in custody' has different meanings in different contexts"). For these reasons, we reject defendant's contention that he is "incarcerated" while on furlough.

¶ 18. Because we base our decision on the plain meaning of the statute, we do not consider the other sources defendant points us to, including DOC directives and federal sentencing guidelines. See <u>Flint v. Dep't of Labor</u>, 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080 ("[W]e resort to other tools of statutory construction . . . only if the plain language of the statute is unclear or unambiguous."). Furlough may constitute a form of "confinement" in other contexts, but for the purposes of the Sex Offender Registration Act, a person who physically resides in the community on furlough is not incarcerated.

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice

9