NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 5

No. 23-AP-395

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Criminal Division |
| | |
| Geromy Wells | December Term, 2024 |

Justin P. Jiron, J.

Maria L. Byford, Orleans County Deputy State's Attorney, Newport, for Plaintiff-Appellee.

Sarah Star of Sarah R. Star, P.C., Middlebury, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **REIBER, C.J.** Defendant Geromy Wells appeals from his conviction for misdemeanor unlawful mischief. He argues that there was insufficient evidence for the jury to find that his conduct constituted "damage" within the meaning of the unlawful-mischief statute, 13 V.S.A. § 3701(c). The State presented evidence that defendant urinated, spat, and rubbed his genitals on various parts of his holding cell, necessitating the closure of the cell and incurring $75 in clean-up costs. Because this evidence was sufficient for the jury to find that defendant's actions resulted in a substantial impairment to the cell's use and thus constituted "any damage" under the statute, we conclude that the trial court properly denied his motion for acquittal. We therefore affirm.

¶ 2.    Defendant was charged with disorderly conduct, 13 V.S.A. § 1026, and attempted assault on a law enforcement officer with bodily fluids, 13 V.S.A. § 1028, following an encounter with police officers in which defendant threatened a bystander and spit on an officer.  The State also charged defendant with "intentionally [doing] any damage to property of any value not exceeding $250.00" in violation of 13 V.S.A. § 3701(c), based on defendant's actions in his holding cell after arrest.

¶ 3.    The following facts were introduced at trial.  In August 2022, an officer of the Newport Police Department stopped and questioned defendant after seeing him hide in a stairway. Two bystanders told the police officer that defendant had just given them items that he claimed he stole from Walmart.  Defendant began to threaten one of the bystanders, and police placed him in custody.  Defendant claimed he was armed with a "bear gun, pellet, two tasers and spray" and appeared to be under the influence.  He was taken into custody and transported to the police department, where he was placed in a holding cell.  One of the responding officers testified that defendant "wipe[d] his genitalia across . . . the bench area that's next to the toilet and then was standing in front of the sink with his genitalia over the top of . . . the sink area," and later spat on the floor of the cell.  The State presented a video recording from the holding cell that corroborated the officer's statements.  After defendant was moved from the cell, the police department put the cell out of service until it was cleaned and disinfected the following morning.  The department incurred an expense of $75 in cleaning and disinfecting the cell, which the officer explained was an "extra expense" beyond what would normally occur after use.

¶ 4.    Following the close of the State's evidence at trial, defendant moved for judgment of acquittal on all counts under Vermont Rule of Criminal Procedure 29(a).[1]  As to the unlawful-

---

[1] The court granted a judgment of acquittal on the disorderly conduct charge but denied acquittal on the charge of attempted assault on a law enforcement officer with bodily fluids, for which defendant was convicted.  Defendant does not appeal that conviction.

mischief charge, defendant argued that the charge confused "the concepts of damage with making something dirty or unclean." Citing a dictionary definition of "damage" as "loss or harm resulting from injury to person, property, or reputation," defendant argued that his actions could not constitute damage within the meaning of the unlawful-mischief statute. In response, the court cited alternative dictionary definitions of damage that referred to the impairment of an object's "value, usefulness, or normal function" and to "any change in a thing . . . that degrades it away from its initial state." Relying on this "very broad definition of damage," the court denied defendant's motion, concluding that "there's enough there that . . . the jury could find that [defendant's conduct] meets the definition of damage." In denying defendant's Rule 29(a) motion, the court additionally held that the State had produced sufficient evidence that the jury could find that defendant acted with the requisite intent. The court instructed the jury that defendant "must have acted purposely with the conscious objective of damaging the property." The court further instructed that "a person's intent may be shown . . . by [their] conduct." Defendant did not object to this instruction. The jury found defendant guilty, and he now appeals.

¶ 5.    This Court reviews the denial of a Rule 29 motion for judgment of acquittal de novo, "considering whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Ellis, 2009 VT 74, ¶ 21, 186 Vt. 232, 979 A.2d 1023 (quotation omitted). Judgment of acquittal under Rule 29 is appropriate "only if the State has failed to put forth any evidence to substantiate a jury verdict." Id.

¶ 6.    On appeal, defendant argues that the trial court misconstrued the term "damage" as used in the unlawful-mischief statute. Defendant contends that the trial court incorrectly defined damage to include situations where a defendant's action impairs only the function of property. Defendant argues that this Court should adopt a narrower definition of damage and hold that making property dirty or unsanitary does not suffice.

¶ 7.    Our goal in interpreting a statute is to determine the intent of the Legislature. State v. A.P., 2021 VT 90, ¶ 12, 216 Vt. 76, 268 A.3d 58. "If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language." Id. (quotation omitted). However, where the plain language is ambiguous, "we look beyond the language of a particular section standing alone to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law." State v. Charette, 2018 VT 48, ¶ 6, 207 Vt. 372, 189 A.3d 67. "We review [issues of] statutory interpretation without deference to the trial court." State v. Berard, 2019 VT 65, ¶ 7, 211 Vt. 39, 220 A.3d 759.

¶ 8.    In full, 13 V.S.A. § 3701(c) states:

> A person who, having no right to do so or any reasonable ground to believe that he or she has such a right, intentionally does any damage to property of any value not exceeding $250.00 shall be imprisoned for not more than six months or fined not more than $500.00, or both.

The statute does not define the word "damage." "Words that are not defined within a statute are given their plain and ordinary meaning." State v. Gauthier, 2020 VT 66, ¶ 7, 213 Vt. 82, 238 A.3d 675 (quotation omitted). Defendant argues that this Court should adopt the definition used in Black's Law Dictionary, which defines "damage" as (1) "[l]oss or injury to person or property; esp., physical harm that is done to something or to part of someone's body," and (2) "[b]y extension, any bad effect on something." Damage, Black's Law Dictionary (12th ed. 2024). Black's also defines "criminal damage to property" as "[i]njury, destruction, or substantial impairment to the use of property (other than by fire or explosion) without the consent of a person having an interest in the property." Id. Criminal Damage to Property. While defendant argues that it was error for the trial court to refer to a common dictionary definition of "damage," this Court recognizes that the plain and ordinary meaning of undefined terms "may be obtained by

4

resorting to dictionary definitions." Khamnei v. Burlington Pub. Works Comm'n, 2018 VT 19, ¶ 14, 206 Vt. 550, 183 A.3d 1157 (quotation omitted).

¶ 9.     The language of the statutory prohibition in 13 V.S.A. § 3701(c) identifying "any damage" reflects the Legislature's intent to broadly prohibit actions that cause injury or impairment to property.  The definition of damage as proposed by defendant of "any bad effect on something" comports with the statute and is broad enough to encompass temporary soiling when such soiling results in a loss or injury.  While defendant argues that "making something dirty" does not constitute damage, defendant's intentional acts resulted in a "bad effect" that the department needed to address.  Under the more specific definition for criminal damage to property quoted above, defendant's actions resulted in the "substantial impairment" of the holding cell because the cell became unusable until the damage that he caused was rectified.  The police department testified that the fluids in the cell presented a "health concern."  Thus, the department determined new inmates could not be placed into the cell until it was cleaned and disinfected.  In doing so, the department incurred $75 in extra expenses beyond normal operating costs.  While the amount of damage was minimal, it was enough to meet the statutory prohibition on causing "any damage to property of any value."  13 V.S.A. § 3701(c) (emphases added).

¶ 10.     In New York v. Collins, a New York court noted that "it is commonly recognized that the term [damage] contemplates injury or harm to property that lowers its value or involves loss of efficiency and that only slight damage must be proved." 733 N.Y.S.2d 289, 291 (App. Div. 2001) (quotation omitted).  Applying this definition, the court concluded that spraying the front of a court building with liquid chicken feces constituted damage because the resulting stench was long-lasting and required extensive cleaning, which forced the closure of the front entrance of the court, caused structural damage to steps of building, and necessitated the purchase of a new commemorative banner.  Id.  As the New York court recognized, "damage" is broad enough to include actions that harm property by impairing its use, thereby lowering its value or efficiency.

5

Id. Here, the jury instructions were consistent with this broad definition and there were sufficient facts for the jury to find that defendant harmed police department property by making the cell unsanitary and therefore temporarily unusable.

¶ 11.   In contrast, a narrower focus on "injury or loss" would exclude damage that interferes with the use of the property but does not physically harm the property itself.  If urinating and spitting on property is not "damage," intentional contamination with bodily substances or other harmful liquids that necessitates cleaning and disinfecting, but not repair, would also be excluded. Excluding this type of conduct would be contrary to the clear legislative command prohibiting intentionally doing "any damage" to property.  13 V.S.A. § 3701(c).

¶ 12.   Defendant's arguments to the contrary are without merit.  Defendant argues that the trial court erred by confusing "the concept of damage with making something dirty or unclean." Defendant claims that a broad definition of damage could encompass acts that result in mere dirtying of another's property, such as using a plate at a restaurant or soiling a public bathroom. To this end, defendant argues that his conduct is more aptly described as "defiling."  Black's Law Dictionary defines "defile" as (1) "[t]o make dirty; to pollute or physically soil" and (2) "[t]o taint, make impure, or corrupt, esp. through a show of contempt or disrespect."  Black's Law Dictionary, supra, Defile.  The State concedes that defendant's actions could readily be characterized as "defiling," but takes the position that a workable definition of "damage" can include conduct that also "defiles."  We agree.  Where, as here, the conduct results in substantial impairment to the use and function of the property, it meets the definition of damage.  We are unpersuaded by defendant's claim that broadly defining damage will criminalize trivial and normal impairment to property because he fails to recognize that the offense also requires proof that the person had no right to take the action and intended to cause the damage.

¶ 13.   Finally, defendant claims that the State presented no evidence that defendant intended to take the holding cell out of service or make the department incur cleaning costs.

6

Defendant failed to preserve this argument by raising it below.  State v. Schapp, 2019 VT 27, ¶ 20, 210 Vt. 180, 212 A.3d 1226 (explaining that where defendant fails to object to instruction at trial, objection is not preserved for appeal).  Here, lack of intent was not raised as a basis for the motion for acquittal.  In addition, there was no objection to the jury instruction on intent.

Affirmed.

FOR THE COURT:

_____

Chief Justice

¶ 14.  **COHEN, J., dissenting.**  The Court holds that "damage" to property means "substantial impairment to the use and function of the property" and that there was enough evidence for a jury to find that defendant damaged police property when he spit on the floor and rubbed his genitals across the bathroom appliances in his holding cell.  Ante, ¶ 12.  In my view, there was insufficient evidence for the jury to find that defendant's actions amounted to damage as the Court defines it because defendant did not cause a "substantial impairment" to the use or function of the holding cell.  Therefore, I respectfully dissent.

¶ 15.  Defendant did not destroy any property.  The bathroom sink, bench, and toilet remained physically intact.  Nor did defendant substantially impair the use or function of the bathroom facility in the holding cell.  To be "substantial," impairment must be significant and lasting.  See In re N.E. Materials Grp. LLC Act 250 JO #5-21, 2015 VT 79, ¶ 15, 199 Vt. 577, 127 A.3d 926 (quoting Act 250 Rules stating "substantial change" is defined as change resulting in "significant adverse impact"); Potvin v. Champlain Cable Corp., 165 Vt. 504, 511, 687 A.2d 95, 99 (1996) (defining "substantially limits" in disability discrimination case as "significantly restricted"); In re Barlow, 160 Vt. 513, 521-22, 631 A.2d 853, 858 (1993) (defining "substantial change" under environmental regulations in permitting dispute as "significant impact").  Black's

defines "substantial" as "[c]onsiderable in extent, amount, or value; large in volume or number . . . [h]aving permanence or near-permanence; long-lasting." Substantial, Black's Law Dictionary (12th ed. 2024). In my view, "substantial impairment" requires a showing of physical destruction, danger, or significant long-lasting negative impacts on the use or function of the property. For example, if defendant had broken a chair at the police department, he could reasonably be considered to have caused damage because he would have caused physical harm that rendered the chair unusable, possibly permanently.

¶ 16. Defendant's actual behavior, in contrast, caused minimal if any impairment to the holding cell. The evidence presented at trial was that defendant rubbed his genitals on several bathroom surfaces in his holding cell, spit on the floor, and "appeared to attempt" to urinate in the sink.[2] Such actions may be unsanitary and vulgar but cannot be reasonably viewed to have significantly impaired the function of the cell such that it was "damaged" for purposes of the unlawful-mischief statute.

¶ 17. The primary case relied on by the Court to support its conclusion that there was enough evidence for the jury to conclude that defendant damaged the cell by his actions is New York v. Collins, 733 N.Y.S.2d 289, 291 (App. Div. 2001). The Court treats Collins as analogous to the present matter. Ante, ¶ 10. However, the charged actions in Collins were far more harmful than defendant's actions here. In Collins, the defendant sprayed the front of a court building with liquid chicken feces, an act which caused a long-lasting smell, extensive cleaning resulting in structural damage, destruction of the court's commemorative banner, and a prolonged closure of

---

[2] The majority's statement that the State presented evidence that defendant urinated in the sink is not supported by the transcript of the trial, or the surveillance video of the holding cell. Instead, one officer testified that "[defendant] approached the toilet, urinated—what appeared to be as urinating in the toilet . . . and then was standing in front of the sink with his genitalia over the top of the—sink area." In the video of the holding cell, defendant stands in front of the sink with his genitals exposed, but it is not clear that he is urinating. The only reference to defendant appearing to urinate outside of the toilet was in the affidavit of probable cause, which was not part of the evidence adduced at trial.

the entrance to the court. 733 N.Y.S.2d at 291. Defendant's actions, while unsanitary, are nowhere near the level of destruction and disruption that the New York court building endured. Spraying chicken feces across a public building cannot reasonably be compared to the facts here. Unlike Collins, defendant's actions caused no physical damage and had only a temporary and minimal impact on the use of the property. The police department merely put the holding cell out of service for one night until another employee could sanitize the cell in the morning. This was a far shorter, and less significant, interruption in use than the days that the New York court's front door was unusable in Collins. Id.

¶ 18. In my view, there was insufficient evidence for a jury to find that defendant's conduct constituted "damage" within the meaning of the unlawful-mischief statute, and his conviction should be reversed. I therefore respectfully dissent.

_____
Associate Justice